LESTER G. McKINNIE et al.

*v.*

STATE OF TENNESSEE.

379 S.W.2d 214

*(Nashville,* December Term, 1963.)

Opinion filed January 8, 1964.

Petition to Rehear Denied March 5, 1964.

196

Looby & Williams, Nashville, for plaintiffs in error.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The plaintiffs in error were convicted of conspiring to injure the business of the B & W Cafeteria by blocking the entrance thereto in the event they were denied entrance to and service in said cafeteria. The jury recommended a fine of less than $50.00. The trial judge sentenced each of these defendants to ninety days in the Davidson County workhouse and fined each of them $50.00. An appeal was seasonably perfected, able briefs filed, and oral arguments were heard, and, after a thorough study of the record and applicable authorities, we now have the matter for disposition.

The indictment alleges a violation of two sections of the Tennessee Code, sec. 39-1101 (7), T.C.A., and sec. 62-711, T.C.A. The pertinent part of sec. 39-1101, T.C.A., is as follows:

"The crime of conspiracy may be committed by any two (2) or more persons conspiring: * * * (7) to commit any act injurious to public health, public morals, trade, or commerce * * *."

Section 62-711, T.C.A., provides, in part, that "any person guilty of turbulent or riotous conduct within or

about" any hotel, inn, restaurant, etc., is subject to indictment and a fine of not less than $100.00. Section 62-710, T.C.A., was also mentioned in the indictment and the trial court's charge, but the defendants were not charged with violating this Section of the Code; nor could they have been so charged since this Section does not purport to define an indictable offense. It was mentioned merely to indicate that the B & W Cafeteria was permitted, by statute, to refuse admittance to any person whom it did not desire to serve.

There are thirteen assignments of error. They will not be taken up seriatim, but all of them will be treated and answered in the course of this opinion.

At about 12:20, P.M., Sunday, October 21, 1962, just after many church services had ended, and at a time when the patrons of the B & W Cafeteria were arriving for lunch, the defendants appeared at the entrance of the cafeteria which is located on Sixth Avenue, in the heart of Nashville, Tennessee. When they arrived, they were informed by the doorman that the cafeteria did not serve colored people and that they could not enter. Despite this, the defendants remained at the entrance to the cafeteria and insisted that, "We are coming in and are going to eat when we git in."

The defendants were asked in a polite way to move along and to refrain from making any trouble. At this time, they had entered a vestibule to the cafeteria, the size of which is estimated as being from four feet by four feet to six feet by six feet and four inches. The defendants were in the vestibule, but were not permitted to enter the main part of the restaurant. After the defendants refused to remove themselves from the

vestibule and after the acts hereinafter set forth had been committed, the police were called and they escorted the defendants away.

■■ In considering the evidence hereinafter briefly summarized, we must remember that, in this State, fact determinations and reasonable inferences to be drawn therefrom are for the trier of facts, in this case the jury. On a review of a judgment of conviction, if there is material evidence to support the judgment, the defendants are presumed to be guilty and this Court will not reconsider the question of whether or not the evidence shows that they are guilty beyond a reasonable doubt; but will consider only the question of whether the evidence preponderates against their guilt and in favor of their innocence. *Smith and Reynolds v. State,* 205 Tenn. 502, 327 S.W.2d 308 (1959), certiorari denied by the Supreme Court of the United States, 361 U.S. 930, 80 S.Ct. 372, 4 L.Ed.2d 354 (1960).

The record clearly shows that these defendants physically blocked the entrance to the B & W Cafeteria by placing themselves in this small vestibule so as to prevent people from entering or leaving; and that entrance to and exit from the restaurant was not possible without squeezing and worming through the wall of flesh created by the defendants' presence and position. The evidence likewise shows that in blocking this entrance, the defendants were pushing and shoving to some extent in an effort to enter this restaurant, but were prevented from doing so because the doorman kept the inner door closed to them. For example, one of the State's witnesses testified about the situation as follows:

"Well, it was still blocked and people inside couldn't get out. And you could see the crowd outside—wasn't coming in. And it just seemed like an awfully long time till the—under the circumstances—it wasn't too long—while that state of confusion existed. * * *"

A number of other witnesses testified to this state of facts and as to things they heard while they were trying to get in or out of the restaurant. Probably under the record, one or two white people did squeeze their way either in or out while all of this was going on, but nevertheless these defendants refused to vacate the vestibule until they were peacefully escorted away by the police. The record clearly shows that after the vestibule was cleared, the people inside the restaurant were able to go out and the people outside the restaurant were able to enter. There is also proof that there were as many as seventy-five people on the outside attempting or wanting to get in while these defendants were in the vestibule.

Section 39-1101, T.C.A., makes it a misdemeanor for two or more persons to conspire to do an unlawful act. In order for the offense to be indictable, it must be committed *manu forti*—in a manner which amounts to a breach of the peace or in a manner which would necessarily lead to a breach of the peace. The charge here, as it is clearly set forth in the indictment, is that the defendants crowded into this small vestibule and through their actions, as detailed above, committed an act injurious to trade and commerce. When two or more persons conspire to commit an act such as this, sec. 39-1101, T.C.A., provides that they shall be guilty of a conspiracy. Section 62-711, T.C.A., in part provides that when a person is guilty of turbulent or riotous conduct within or about

restaurants, hotels, etc., he may be indicted and fined not less than $100.00. One of the questions raised by the defendants is whether the indictment in this case sufficiently describes the offense to meet the requirements of sec. 40-1802, T.C.A., which provides that the indictment must state the facts in ordinary and concise language so as to enable a person of common understanding to know what was intended, etc. Clearly, the indictment in this case, which consists of over a legal page in 10 point type, informs each of the defendants of the conduct for which he has been indicted, and the statutes which the State contends that such conduct has violated.

The defendants through various motions and throughout the trial attempted to say that this prosecution was brought for the purpose of enforcing a rule of segregation or racial exclusion in facilities licensed by the State, open to the public, and vested with public interest; and that such a prosecution is contrary to the due process and equal protection clauses of the 14th Amendment to the Constitution of the United States. From a very careful examination and reading of the record, the indictment, and the charge of the court, we certainly feel that such questions are not determinative of this prosecution. We can assume for the sake of argument that discrimination based on race by a facility such as this cafeteria does violate the due process and equal protection clauses, but these questions are not presented here. A careful reading of this record shows that the only question is whether or not these defendants were attempting, in an illegal manner, to correct what they deemed to be an unconstitutional practice on the part of this cafeteria; and, if the method which these defendants adopted was

illegal, whether it constitutes a misdemeanor under the Sections of the Code under which they were indicted.

■■■ This Court long ago in *State v. Lasater,* 68 Tenn. 584 (1877), held that an indictment under sec. 62-711, T.C.A. was good and that the act was constitutional. In that case, a judgment quashing the indictment was reversed where the indictment alleged that the defendant had been guilty of turbulent and riotous conduct within and about a hotel by quarreling, committing assaults and batteries, breaches of the peace, loud noises, and trespass upon a hotel. It seems to us that there is sufficient proof in the instant case, which the jury apparently believed, to warrant the conviction under this Section. The word "riotous" is defined by Webster's New World Dictionary as "having the nature of a riot or disturbance of the peace." The conduct of the defendants certainly meets this definition. Nowhere in this record is it insisted that there was not a prior agreement to engage in such conduct if entrance to this restaurant was denied. In *Smith and Reynolds v. State,* supra, this Court had occasion to define a criminal conspiracy. This definition seems to meet the situation here. We likewise held in the Smith and Reynolds case that a conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances; and that such a conspiracy consists of a combination between two or more persons for the purpose of accomplishing a criminal or unlawful act, or an object, which although not criminal or unlawful in itself, is pursued by unlawful means, or the combination of two or more persons to do something unlawful, either as a means or as an ultimate end. While the request for admittance by the defendants was not criminal in the first

instance, and while for the sake of argument, we may even assume that they had a right to go on the premises of the restaurant, the method they employed to effect their admittance was clearly unlawful.

■ It is very earnestly and ably argued by counsel for the defendants that to prevent the defendants from acting as alleged in the indictment would constitute a denial of freedom of speech in contravention of the 1st Amendment to the Federal Constitution as made applicable to the States through the 14th Amendment. Of course, in this country, a person has a right to speak freely and a denial of this right offends our heritage of freedom. The individual must feel free to speak his mind; the press must be free to publish its opinion; and the movies must be free to express their views. There are literally hundreds of different agencies to whom freedom of expression is guaranteed. But around such freedoms there must be certain safeguards for the protection of society and when these safeguards are violated, the violator is subject to civil or criminal sanctions or both. Thus one cannot be allowed to recklessly shout "fire" in a crowded theatre. In crowding into this narrow vestibule and effectively blocking the entrance to this restaurant, the defendants interfered with the right of other individuals to come and go in the furtherance of trade and commerce and in so doing they violated the Sections of the Code hereinbefore set forth. See *Feiner v. New York*, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951).

Had this been a labor dispute, the actions of the defendants would clearly be beyond that of peaceful picketing, which does not include in its definition any form of physical obstruction or interference with business. It is well established that labor has the right to peacefully

picket and thereby express its views on the subjects involved in a labor dispute. But the picketing must be peaceful. When it goes beyond the peaceful stage and involves force, violence, threats, terror, intimidation, coercion and other things of like kind, it cannot be tolerated and those persons guilty of such acts are subject to state and federal laws. By analogy, if the conduct of the defendants here transcended the bounds of peaceful picketing, they would, under the evidence in this record, be guilty of acts injurious to trade. We think that their conduct clearly goes beyond the bounds of peaceful demonstration and picketing.

■ It is very forcefully insisted that the two Sections of the Code under which this indictment was laid should have been declared unconstitutional because they do not clearly and sufficiently define the offense charged against the defendants. In all the years that these Code Sections have been the law in this State, this question has not been raised as far as we can determine. As far as we know, there is no criminal statute which describes every specific kind of violation that might be indictable under it; but so long as the statute generally states, as these statutes do, what is prohibited, their constitutionality cannot be challenged for indefiniteness. We think that the statutes now under consideration clearly set forth the offense intended and that the indictment framed thereunder clearly sets forth the way in which these defendants allegedly violated their provisions.

■ In his charge to the jury, the trial judge (page 1109 of the transcript) told the jury that the presentment charged the defendants with the offense of an unlawful conspiracy to commit acts injurious to the B & W's business in violation of Code Sections 39-1101(7), T.C.A.,

and 62-711, T.C.A. Following this, he read these various sections of the code to the jury, including sec. 62-710, T.C.A., and then on the following page of his charge, he set forth the provisions of sec. 62-710 once again. It is argued in behalf of these defendants that the charging and reading of sec. 62-710, T.C.A., which does not purport to define a criminal offense, but is instead a civil statute, was error. A careful reading of the indictment and the whole charge shows that the only purpose in referring to this statute was to indicate that this restaurant was being operated for white people only by authority of this section. There were no questions raised following the charge about the propriety of reading it and we do not see how reference to a civil statute such as this, although error, could affect the jury's verdict, since there was ample evidence to convict the defendants of the offense defined in the other sections of the code charged.

It would not have been an unlawful conspiracy for the defendants to agree to seek entry into this cafeteria for the purpose of being served food coupled with an overt act in furtherance of this agreement; but any agreement to obstruct the entrance of a place of business and thus injure their business does constitute an unlawful conspiracy.

 Among other requested special instructions was one to the effect that the State had abandoned the portion of the indictment charging a conspiracy to violate sec. 62-711, T.C.A. We think that this special instruction was properly refused by the trial court because the whole case is built upon the theory that the defendants' actions in obstructing this passageway was the overt act committed in furtherance of this conspiracy.

Another requested instruction was to the effect that the cafeteria had no legal right to refuse to serve a person because of his race or color. As we have heretofore said, this question is not the issue in this case, and was not the basis of the indictment and conviction. Even if we assume that the owner of the cafeteria had no right to exclude these defendants, this does not excuse their conduct in blocking this narrow passageway. As citizens, we are not permitted to take the law in our own hands and correct what we consider to be wrongs, except in the abatement of a private nuisance and then we can act only when we can do so without committing a breach of the peace. When we thus commit a breach of the peace by attempting to assert our rights, we are liable under the law for this breach of peace. "Two wrongs do not make a right."

The cross-examination of the witnesses for the State by counsel for the defendants pitches their case on the proposition that if the restaurant people hadn't prevented their entrance they would not have blocked the door. This, of course, is all excellent argument to the jury; but at the same time even assuming that the restaurant people had no right to exclude these people from their premises, this does not permit these defendants to block this passageway.

It is argued and several volumes of this large record are taken up with the proposition that the jury was composed only of white persons whose "personal practice, custom, philosophy, and belief in complete racial segregation in virtually all aspects of their social existence" thus disqualified them to act as jurors in this case. The jurors on *voir dire* were questioned and cross-examined by counsel for both sides and by the court. See

*Smith and Reynolds v. State,* supra. Those who were accepted stated that even though they might have the social belief set forth in the above quotation from defendants' counsel, they could exclude this for the purpose of trying these defendants and could decide the case on the basis of the evidence and the law charged to them by the court. As we have said a number of times herein, this is not a case of racial segregation but is rather a prosecution for a conspiracy to obstruct trade. There were a number of Negro jurors examined but all of them were excused for one reason or another and no Negro was on the jury; but there is no constitutional requirement that a trial be by a mixed racial jury. If there has been no illegal exclusion of these people from the jury, regardless of their color, then there is no constitutional violation of the rights of the parties. As we said in *Kennedy v. State,* 186 Tenn. 310, 210 S.W.2d 132 (1947):

"It should be borne in mind that members of the Negro race have no constitutional right to trial by a mixed racial jury. All that they have is a right that their race shall not be discriminated against in the selection and drawing of grand juries."

No such discrimination is shown in this case.

Finally it is insisted that the judgment of the court was inconsistent with the verdict of the jury. The jury found each of the defendants guilty and agreed upon a fine of less than $50.00, but did not fix any amount. The trial judge charged the jury that if they did find the defendants guilty under sec. 39-1101, T.C.A., they could impose punishment of imprisonment in the county jail or workhouse for not more than one (1) year and a fine not exceeding $1,000.00 or both, as provided by the stat-

ute. He then went on to charge the jury, after reading the statute, that if they convicted these defendants "and believe that a fine of $50.00 or less would be sufficient punishment, then all you need to say in your verdict is that you find the defendant, or defendants, guilty, and the court will fix the punishment." All the jury was trying to do in its verdict was to state that they found the defendants guilty and fixed a fine at less than $50.00 according to the charge of the court. By Article 6, Section 14 of the Tennessee Constitution, no fine in excess of $50.00 may be fixed except by a jury. Section 40-2525, T.C.A., contains the same provision. Thus all the trial judge was doing was trying to comply with this constitutional and statutory provision. The trial judge had the right and discretion to levy a fine, if the jury found them guilty, up to $50.00 and to attach a workhouse sentence, if, in his discretion, he thought the facts merited such punishment. Clearly, he has not abused this discretion in doing what he did here. If the defendants had wanted the jury to fix the fine and imprisonment, if the jury found them guilty, all they had to do at the beginning of the trial was to make the proper request, as provided by sec. 40-2704, T.C.A., that this be done, and if such had been done then the trial judge would have had no authority to fix this fine and imprisonment as he did. Under the situation here, the fine and imprisonment which he levied were clearly in accordance with his right and duty.

Counsel for the defendants in his able brief argues that *Peterson v. City of Greenville,* 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963) and *Lombard v. State of Louisiana,* 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963) are applicable. These two cases are distinguishable from the instant case. The trespass complained of

in the Peterson and Lombard cases was the act of sitting on a stool at a lunch counter. This is basically an innocent and unoffensive act. It was only unlawful, in the eyes of the city and state concerned, because of a city ordinance in the Peterson case and an executive directive in the Lombard case, both of which required segregation of the races in public facilities. But absent the governmental mandate and the color of the defendants' skin in those two cases, and the act is basically unoffensive and innocent. This is not so in the instant case. *Stripped of any question of race and discrimination, the act complained of is still unlawful.* In the instant case, if these eight defendants had been white boys, their acts would still have been unlawful. We cannot escape from the fact that these eight defendants were blocking the entrance to the doorway of the B & W Cafeteria. Regardless of who they were and why they were blocking the doorway, their conduct is still basically unlawful.

In the instant case, we are presented with the timely question of how far a person can go to secure his constitutional rights. Now it seems clear that a person cannot commit an assault on another to gain these rights. It seems equally clear that one cannot damage the property of another with impunity because the other has committed an act of racial discrimination against him. We think that it is also clear that these eight defendants cannot interfere with the B & W's trade by blocking the latter's doorway in order to redress the wrong that they feel the cafeteria has visited upon them. The securing of constitutional rights must be done in a lawful manner.

As a result of what we have said herein, the convictions must be affirmed.

## On Petition to Rehear

The plaintiffs in error through able counsel have filed herein a courteous and dignified petition to rehear. After very carefully considering this petition and the brief in support thereof, we must conclude that it is nothing more than a reargument of the questions presented at the time this case was originally heard.

One additional authority is cited, *State of Delaware v. Brown,* 195 A.2d 397. This Delaware case is no wise in point herein. The same reasons that we assigned as to why *Peterson v. City of Greenville* and *Lombard v. State of Louisiana* were not in point are applicable to the Brown case. In the Brown case, Brown, a Negro, entered the premises of a restaurant and requested service of food. The proprietor denied him service solely because of his race, and, upon his refusal to leave, obtained a warrant for his arrest for violation of the criminal trespass statute of Delaware. That is not the question here.

Basically and essentially the whole argument made originally, and now made, is based upon the philosophy and legal reasoning which summed up may be stated thus; in so long as our motives are right we can pursue any means (even though illegal and unlawful) we may choose to accomplish those motives. The authorities cited by the plaintiffs in error all go to the proposition that the motives of these plaintiffs in error were lawful. There is no authority nor so far as we know can any be found, whereby one may resort to unlawful and illegal means to accomplish lawful motives.

After thoroughly considering this petition to rehear and the matter again, we are convinced that the means

employed by these plaintiffs in error to accomplish their motives were illegal and unlawful, and it is for this alone that they are convicted. Under the factual situation of this case by their using illegal and unlawful means they have thus violated fundamental law and are guilty. The verdict against them for reasons set forth in our original opinion must be sustained. The petition to rehear is accordingly overruled.