STATE OF TENNESSEE ex rel. HENRY SMITH, JR.,
Plaintiff in Error,

*v.*

WILBURN JOHNSON, Warden, Tennessee State
Penitentiary, Defendant in Error.

413 S.W.2d 694.

(*Jackson*, April Term, 1966.)

Opinion filed March 17, 1967.

Edward C. Duke, Jackson, for plaintiff in error.

George F. McCanless, Attorney General, and Paul E. Jennings, Assistant Attorney General, Nashville, for the State; Phil M. Canale, Jr., District Attorney General, 15th Judicial Circuit, Memphis, represented the State in the trial court, for defendant in error.

Mr. Special Justice Harbison delivered the opinion of the Court.

Plaintiff in error was indicted on September 16, 1960, for murder in the first degree committed while in the perpetration of a robbery. He was convicted in the Criminal Court of Shelby County, Tennessee, on January 11, 1961, and sentenced to death by electrocution. His conviction was affirmed by this Court in the case of *Smith v. State*, 209 Tenn. 499, 354 S.W.2d 450 (1961).

The death sentence of plaintiff in error was later commuted. In February, 1962, plaintiff in error filed a petition for the writ of habeas corpus which was heard and denied in the Criminal Court of Davidson County,

Tennessee. This Court affirmed the dismissal of that petition for the writ of habeas corpus in the case of *State ex rel. Smith v. Bomar,* 212 Tenn. 149, 368 S.W.2d 748 (1963).

Thereafter, plaintiff in error filed a petition for the writ of habeas corpus in the United States District Court for the Middle District of Tennessee, but that petition was dismissed on October 23, 1964. He filed the petition for the writ of habeas corpus involved in the present case on March 18, 1965, in the Criminal Court of Davidson County, Tennessee. Pursuant to order of this Court, the petition was transferred to the Criminal Court of Shelby County, Tennessee, where it was heard and dismissed on December 20, 1965. From the latter decision the present appeal has been perfected.

The single issue presented in the present petition for the writ of habeas corpus is that the petitioner was indicted by a grand jury in Shelby County, Tennessee, and that the Criminal Courts of that county have always systematically excluded Negroes from grand jury service because of their race, color and creed, in violation of the constitutional rights of plaintiff in error.

A full evidentiary hearing was held by the trial judge on this petition, and voluminous testimony introduced on the question of whether there had been a systematic exclusion of persons from grand jury service by reason of race. The trial judge held that the proof was entirely insufficient to sustain the allegation of the petition. We agree with his conclusion and we affirm his action in dismissing the petition for the writ of habeas corpus.

The petitioner himself testified that there might have been one Negro on the jury panel from which the trial

jury in the present case was selected, but his petition does not challenge the composition of the trial jury itself. Petitioner did not know whether there were any Negroes on the grand jury that returned the indictment against him, and had no personal knowledge as to the composition of grand juries or as to how they were selected.

Statistical information was introduced to show the proportion of Negroes in Shelby County to white persons and to show the number of registered voters in each category. There is no statistical evidence in the record, however, to show the composition of grand juries at or about the time of the return of the indictment in the present case. There is evidence that there was at least one Negro on the panel of the grand jury that returned the indictment against plaintiff in error, although he apparently did not serve on the day this particular indictment was returned. This Negro man identified his picture as being a member of the grand jury panel which did return the indictment. There is testimony that Negroes have served on grand juries in Shelby County for many years as well as on trial juries.

A newspaper reporter who had written on the subject of local jury selection testified that he had heard or understood that only about one per cent of the jurors actually serving in Shelby County in 1960 were Negroes, but the reporter admitted that he had no personal knowledge in this regard. He said that this figure did not reflect the number of Negroes subpoenaed or on the eligible list and he said that he had no knowledge that Negroes ever had been systematically excluded from jury duty. He stated that he certainly would have reported any factual information concerning such exclusion if he had obtained

such information in his investigation of jury selection in the county.

It appears without controversy that something in the neighborhood of one hundred thousand names are kept in a box from which the names of persons eligible to serve on jury panels in Shelby County are drawn, and that this has been the situation for many years. These cards do not show the race of any individual. The uncontradicted testimony of the Chairman of the Jury Commission is to the effect that he obtains names of eligible jurors from various city directories, from voting records, tax registers, poll tax receipts and from interviews with principals of schools (to obtain names of parents) and from conversations with persons in the community, both Negro and white, from which he endeavors to get the names of reliable jurors to be placed in the box. Names of persons are drawn from the box at random at the beginning of each term of court, and there is absolutely no showing in the record before us that any segment of the community has been systematically or deliberately excluded by reason of race, color, creed or any other particular criterion. The Chairman of the Jury Commission did testify that in making up the list of persons eligible to serve as jurors he tried to "keep out of the slums," but he testified positively that he undertook to obtain representative persons from all of the neighborhoods in the community, including the areas that were predominately Negro. He testified that he did not and could not know whether the persons whose names were drawn for any particular term were white, Negro, Indian, or other racial group.

As stated, there are no statistical data in the record of any reliable or credible nature as to the composition of grand juries by race. The Chairman of the Jury Commis-

sion testified that the first time prior to 1960 when he recalled a Negro serving as a full-time grand juror was about 1955. He said that Negroes had been used as substitute jurors for some twenty years, and that there had been an increase of Negro jurors as well as white jurors in recent years, although he has made no particular effort to increase the proportion or percentage of Negroes. He testified that the directories from which names are drawn do not indicate the race of the individuals whose names appear therein.

He testified that prior to 1958 members of the grand jury were selected by the Criminal Court Judge, but that beginning in 1958 grand jurors were drawn from the persons subpoenaed for the petit juries. The testimony is clear that for the term during which plaintiff in error was indicted the names of the persons to serve on the particular grand jury had been drawn at random by a young child.

Several members of the grand jury which met for the May, 1960 term, during which plaintiff in error was indicted, testified that there were Negroes on the grand jury panel, although some of them could not remember specifically whether the Negro members were regular or substitute. One of the Negro members testified that he was not the only Negro on the jury panel and a white member testified that he recalled there being two or three Negroes in the jury room.

■ We recognize, of course, that the constitutional rights of plaintiff in error would have been violated had there been a systematic and deliberate exclusion of members of his race, solely by reason of their race or color. See *Strauder v. State of West Virginia*, 100 U.S. 303, 25

L.Ed. 664 (1880) ; *Carter v. State of Texas,* 177 U.S. 442, 447, 20 S.Ct. 687, 689, 44 L.Ed. 839, 841 (1900). See also the numerous cases cited and discussed by the United States Supreme Court in the recent case of *Swain v. State of Alabama,* 380 U.S. 202, 85 S.Ct. 824, 827, 13 L.Ed.2d 759, 763 (1965).

In *Patton v. State of Mississippi,* 332 U.S. 463, 469, 68 S.Ct. 184, 187, 92 L.Ed. 76 (1947), the Supreme Court of the United States said:

When a jury selection plan, whatever it is, operates in such way as always to result in the complete and long-continued exclusion of any representative at all from a large group of negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand.

■ We likewise recognize that inclusion of a minimal or token number of Negroes on a jury list does not prevent the application of the foregoing principles. *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ; *Smith v. State of Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940).

We further recognize the rule that:

(A) defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. * * * Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. *Swain v. Alabama,* 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965).

This Court has applied for many years the principles laid down by the United States Supreme Court in connection with the systematic exclusion of persons from grand juries by reason of race. See *McKinnie v. State,* 214 Tenn. 195, 379 S.W.2d 214 (1964); *Kennedy v. State,* 186 Tenn. 310, 210 S.W.2d 132 (1947).

■ The question of whether there has or has not been shown such a systematic exclusion of racial groups as to violate the rights of an accused is, necessarily, largely one of fact in each case. *Patton v. State of Mississippi,* 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947).

■ We have carefully examined the record in this case in the light of the principles above stated and we are of the opinion that the proof is insufficient to establish the contentions made in the petition for the writ of habeas corpus.

The judgment of the trial court is affirmed at the cost of the plaintiff in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.