## STATE OF TENNESSEE ex rel. JAMES HATHAWAY, Appellant, v. C. MURRAY HENDERSON, Warden, Tennessee State Penitentiary, Appellee.

Court of Criminal Appeals of Tennessee. June 7, 1968.

Certiorari Denied by Supreme Court Oct. 7, 1968.

Charles E. Maness, George C. Cloys, Union City, for appellant.

George F. McCanless, Atty. Gen., Albert D. Noe, IV, Nashville, Asst. Atty. Gen., Fleming Hodges, Dyersburg, for appellee.

## OPINION

WALKER, Presiding Judge.

The petitioner below, James Hathaway, appeals from the dismissal of his petition for the writ of habeas corpus after an evidentiary hearing on June 15, 1967. The petition was filed in Davidson County and transferred to the original convicting court pursuant to T.C.A. Sec. 23-1840.

Following a full evidentiary hearing, the trial judge carefully determined the issues presented and made a thorough finding of facts and conclusions of law.

The bill of exceptions says that the petitioner prayed, was granted an appeal, and that an order was

entered on the minutes of the Court accordingly. The judgment dismissing the petition does not show that such an appeal was prayed for or granted, and the minutes do not reflect it. By a minute entry in the record, it must appear that an appeal was prayed and granted for the appeal to be effective. Teasdale v. Manchester Produce Co., 104 Tenn. 267, 56 S.W. 853; Gray v. State, 207 Tenn. 39, 336 S.W.2d 22. Nevertheless, we have carefully examined and fully considered the entire record of the evidentiary hearing, the written finding and the judgment of the trial court. See State for Use and Benefit of Lawrence County v. Hobbs, 194 Tenn. 323, 250 S.W.2d 549.

After some domestic difficulty on January 1, 1963, the petitioner shot his wife three times, from which she died nearly six months later. He fled the state. He was later apprehended in Illinois and returned from Illinois for trial at the January term, 1965. Since he was indigent, two highly competent attorneys were appointed to represent him at the trial. It resulted in his conviction of murder in the first degree on March 4, 1965, and sentenced to ninety-nine years in the penitentiary. His attorneys filed a motion for a new trial, and were willing to appeal the case. However, he did not want an appeal at that time.

In this proceeding, the petitioner (a Negro) says, first, that his constitutional rights were violated in that there is a systematic exclusion of Negroes from grand and petit juries in Obion County. He says that he was indicted and tried by juries from which members of his race had been unconstitutionally excluded.

The proof shows that at the January term, 1963, the petitioner was indicted for assault with intent to commit murder in the first degree. Two Negroes were on the venire at that term, but neither served on that grand jury. Under T.C.A. Sec. 40-1501, to form the grand jury, the names of all jurors in attendance are placed in a suitable receptacle and drawn by a child under ten or the judge, and the twelve first drawn shall be the grand jury for that term. All jurors in attendance are members of the panel from which the grand jury is drawn. He was, of course, not tried under this indictment.

In the meantime, his wife died after a long confinement in hospitals. At the May term, 1963, on June 24, 1963, the grand jury for that term indicted him for murder in the first degree.

There is no proof at all about the racial composition of this grand jury or of the petit juries for that term of court. Petitioner did not know whether or not there were any Negroes on the grand jury which indicted him; he was a fugitive and in another state at the time. The record is entirely silent on whether or not any Negroes served on this grand jury or the panel from which it was drawn.

On January 11, 1965, the Court appointed attorneys for petitioner and the case was set for trial on March 4, 1965.

No Negro served on the trial jury which convicted petitioner, although one and perhaps two were on the panel from which it was selected. The Circuit Court Clerk testified that in the three years before this hearing five Negroes had served on juries there. He actually

named three, one of whom had served twice. He also testified that he knew of no effort on the part of the jury commissioners to systematically exclude Negroes from serving on juries in Obion County. The court records, of course, do not indicate jurors by race. Two Negroes were serving on the jury at the term of this hearing.

Other than the January term, 1965, there is no proof of the number of Negroes serving on grand and petit juries prior to the three-year period immediately preceding this hearing. This time did not cover the indictment term, although it did include the trial term.

In 1960 the population of Obion County consisted of 23,753 white persons and 3,204 Negro, making a total of 26,957. By 1964 it had increased about 2,200, but the racial composition of the 1964 population is not shown. The record does not indicate the population over twenty-one years of age, other than that there are 300 to 350 Negro voters in the most populous civil district, which includes Union City. There is, therefore, a sizeable Negro population in the county.

 The burden is, of course, on the petitioner to prove the existence of purposeful discrimination. However, once a prima facie case is made out, the burden shifts to the prosecution. Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).

The question here is whether or not this testimony, in itself, makes out a prima facie case of the denial of the equal protection which the Constitution guarantees. Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77. Also see Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22 (1967); Jones v. Georgia,

389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967); and Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed. 2d 634 (1967).

 We do not believe that this proof constituted a prima facie case of purposeful discrimination requiring the State to refute it.

In State ex rel. Smith v. Johnson, 220 Tenn. 49, 413 S.W.2d 694 (1967), our Supreme Court said:

"(1) We recognize, of course, that the constitutional rights of plaintiff in error would have been violated had there been a systematic and deliberate exclusion of members of his race, solely by reason of their race or color. See Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Carter v. State of Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 689, 44 L.Ed. 839, 841 (1900). See also the numerous cases cited and discussed by the United States Supreme Court in the recent case of Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 827, 13 L.Ed. 2d 759, 763 (1965).

"In Patton v. State of Mississippi, 332 U.S. 463, 469, 68 S.Ct. 184, 187, 92 L.Ed. 76 (1947), the Supreme Court of the United States said:

When a jury selection plan, whatever it is, operates in such way as always to result in the complete and long-continued exclusion of any representative at all from a large group of negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand.

"(2) We likewise recognize that inclusion of a

minimal or token number of Negroes on a jury list does not prevent the application of the foregoing principles. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940).

"We further recognize the rule that:

(A) defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. * * * Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. Swain v. State of Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965).

"This Court has applied for many years the principles laid down by the United States Supreme Court in connection with the systematic exclusion of persons from grand juries by reason of race. See McKinnie v. State, 214 Tenn. 195, 379 S.W.2d 214 (1964); Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132 (1947).

"(3) The question of whether there has or has not been shown such a systematic exclusion of racial groups as to violate the rights of an accused is, necessarily, largely one of fact in each case. Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947)."

A defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if

he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race, but purposeful discrimination may not be assumed. It must be proven. That has not been done here. See Swain v. Alabama, supra.

The assignments on racial discrimination in the selection of the juries are overruled.

Petitioner assigns as error the refusal of the trial judge to allow his amendment presented at the hearing.

He moved to amend the petition to show that he was insane at the time of the offense; that he was presently insane when tried and that this condition existed at the time of this hearing; he asked for a psychiatric examination to evaluate his mental condition. One of his attorneys made affidavit that he was unable to communicate with petitioner properly. The trial judge denied the amendment before hearing the proof in the case and again when it was renewed after the testimony of the witnesses, including petitioner.

██ ██ The matter of allowing or disallowing amendments is within the discretion of the court to whom they are submitted, and the judgment of the court will not be overruled by appellate courts, except in those cases where this discretion has been abused. We do not think the trial judge abused his discretion here, and this assignment is overruled.

██ Finally, petitioner says that he was denied a fair trial because he was brought before the jury which tried him while in handcuffs.

Petitioner testified that he was brought into the court-

room in handcuffs when his lawyers were appointed; that the jury which tried him was present. The date of the appointment was January 11, 1965. On the following day, the case was set for March 4, 1965. This evidence was not refuted by the State, but it is not likely that any juror would remember this appearance when the case was tried two months later.

■ A prisoner should not, during his trial, be manacled or handcuffed; but should be left free from shackles unless some such restraint should be necessary to prevent escape. Matthews v. State, 77 Tenn. 128 (1882).

■ Whether or not a prisoner is handcuffed must be left to the discretion of the trial judge. Unless that discretion is abused, it will not be disturbed on appeal. State ex rel. Hall v. Meadows, 215 Tenn. 668, 389 S.W.2d 256 (1964).

The record here shows that this petitioner had fled the state to escape prosecution. This assignment is overruled.

For all of the foregoing reasons, the action of the lower court in dismissing the petition because it is without merit is affirmed.

We express our appreciation to George C. Cloys and Charles E. Maness, of the Union City Bar, for their representation of this petitioner, including their able and well-prepared brief in support of his appeal.

GILLIAM and OLIVER, JJ., concur.