SHARLENE JOHNSON, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

456 S.W.2d 864.

Court of Criminal Appeals of Tennessee. May 20, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

18

W. E. Badgett, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., Arnold Peebles, Jr., Asst. Atty. Gen., Nashville, Tom J. Taylor, Dist. Atty. Gen., Athens, for defendant in error.

## OPINION

RUSSELL, Judge.

Sharlene Johnson and Juanita Smith were jointly indicted in the Criminal Court of McMinn County for shoplifting a dress worth thirty-six dollars. The indictment was obviously drawn to describe the offense as defined in T.C.A. § 39-4235. No mention was made in the indictment of this being a second offense for either defendant. However, some evidence was introduced that Juanita Smith had been previously convicted in Cleveland, Tennessee, of a like offense; and, despite statements by the District Attorney General that no second offense conviction was sought, the trial judge charged the jury the law as to punishment for second offenders, and accepted the jury's verdict of guilt and maximum punishments for Juanita Smith for a second offense and Sharlene Johnson for a first offense. The court thereafter sentenced the former to eleven months and twenty-nine days in the county jail and to the payment of a $500.00 fine; and the latter to six months in jail and a $300.00 fine.

The validity of the conviction and punishment of Juanita Smith has been rendered moot because of the fact of her death on July 28, 1969, while on bond pending this appeal. Therefore, the prosecution as to her has been abated, and we are not concerned with any assignment of errors relative to her conviction.

The legal sufficiency of the convicting evidence as to Sharlene Johnson is questioned. This crime occurred upon the premises of Proffitt's Department Store in Athens, Tennessee, on December 4, 1968. Two security

officers of the store testified that they had the two accused women under observation, and that each of the security officers saw Smith roll a dress onto a coat hanger and put it up under her dress, while Johnson held up another dress which partially shielded the act from view. The two accused women are said to have then looked at each other and then started out of the store, whereupon they were accosted by security personnel, and were told that they would have to go to the store office. Juanita Smith was then seen to go back to the dress rack, take the secreted dress from beneath her clothing and attempt to put it back upon the dress rack. A security officer intercepted the stolen dress before this could be accomplished. The accused refused to stay at the store or identify themselves, and left on foot. They were followed by store personnel and subsequently arrested by police officers.

The thrust of Sharlene Johnson's argument is that what she did, in holding up a dress, was not a criminal act; that she took nothing and did nothing that was a law violation; and that the State did not make out a case against her.

The State's theory is that these women were working in concert. They lived in Knoxville, had been in Chattanooga together, and claimed to have been on their way back to Knoxville. Their actions after attempted apprehension were in concert. Upon the trial, despite very credible evidence that Smith had taken the dress, secreted it beneath her clothing, and then tried to return it to the rack, Sharlene Johnson claimed that none of this happened. She was present and could not have helped seeing at least part of it. We feel that a

jury issue was presented as to her involvement, that the jury determined that she was a participant in the crime, the trial judge approved that verdict, and we do not say that the evidence preponderates against the verdict and in favor of innocence. Sharlene Johnson resisted lawful detention, and fled the scene. There was evidence that the two accused women, who didn't live in Athens, had been in Proffitt's Department Store together about four weeks before this theft. The operation had a professional cast to it. This record well supports the conclusion that these two women were working together, and that what Sharlene Johnson did was in fact to attempt to screen the actual theft from view. The assignments of error going to the weight of the evidence are overruled.

It is next contended that constitutional due process was violated by the fact that "there was only one Negro on the (jury) panel and over the objection of defense counsel this Negro was preemptorily excused from the panel by the State, thus showing that the State intended to deliberately deprive plaintiff-in-error of a trial by a jury of her peers * * *" This is characterized as "a deliberate and schematic exclusion of Negroes from the jury panel."

The factual basis for this contention is in the record only inferentially. The bill of exceptions shows that a Mr. Witt was excused from the jury by the State. After another juror had been substituted, defense counsel stated, "Your Honor, we want to note an exception in the record to the State excusing the only colored person on the jury since these are colored people." The Court responded, "All right. Let the record show that you did object to it. All right." We must assume that Mr. Witt

was a Negro, that he was the only Negro upon the jury panel, and that the accused were Negroes. There is no stipulation or proof of these matters, other than what is quoted heretofore. We will assume the allegations to be true and to be properly before us, as this assignment of error is patently without merit.

First, there is no constitutional guarantee that a person must be tried by a jury wholly or partially composed of persons of his own race. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; State ex rel. Smith v. Johnson, 220 Tenn. 49, 413 S.W.2d 694; 50 C.J.S. Juries § 124, pp. 845-846. The guarantee is against being tried by a jury from which members of a certain race, class, or group have been systematically and schematically excluded. Purposeful discrimination may not be assumed, it must be proven. This record is totally silent as to why, if it be so, that one Negro was upon the trial panel. It is possible that he adequately reflected proper racial balance. Certainly there is no precedent for holding that the State cannot exercise its allotted challenges with unbridled discretion.

If we were to assume that the venire did not properly reflect racial balance, and that this was the result of a scheme or plan operated to achieve that result, the question was waived when the defendants went to trial upon not guilty pleas. Our Tennessee courts have long recognized and enforced the constitutional requirements for racial balance upon a venire. Zanone v. State, 97 Tenn. 101, 36 S.W. 711. But it has uniformly and long been held that this question must be raised by plea in abatement or motion before pleading to the charge, or

it will be held to have been waived. State v. Cole, 28 Tenn. 626; McTigue v. State, 63 Tenn. 313; Turner v. State, 89 Tenn. 547, 15 S.W. 838; Ellis v. State, 92 Tenn. 85, 20 S.W. 500. See also State ex rel. Lawrence v. Henderson, Tenn.Crim.App., 433 S.W.2d 96. The case under consideration well illustrates one valid reason for such a rule. The defendants accepted the jury, went to trial, and might have been acquitted. If so, the acquittal would have been final. It is impermissible to allow one to first await the result of a trial and then, after losing, question whether or not the venire was properly made up. Such a question, for which our procedure has long contained a way and time for raising, must be timely raised or it is waived.

It is next urged as error that the jury was not a proper one, because "one of the jurors had served on a Criminal Court jury within one year prior to this trial * * *" The record does not bear this out. On voir dire, the juror in question unequivocally stated that it had been more than a year since her prior service. However, the assignment of error probably was intended to claim error for jury service within *two* years prior to the trial; since the voir dire would factually support this, and since the statutes cited (T.C.A. §§ 22-206, 22-207) dealt with jury service more than one time in each period of two years. These statutes, however, were repealed by the Public Acts of 1959, Chapter 8, § 22; and replaced by the Uniform Jury Law, T.C.A. §§ 22-223—22-233. The present statutes would not automatically disqualify one from jury service twice within a given two year period. See T.C.A. §§ 22-233—22-234.

We further note that the record does not show

that the juror in question was challenged at all, either for cause or otherwise. This assignment is overruled.

Error is assigned because the deceased defendant Smith was questioned on cross-examination regarding a previous shop-lifting conviction. It is contended that this was error "for the reason that convictions for misdemeanors cannot affect the credibility of witnesses; and this questioning of deceased defendant Smith deprived this plaintiff-in-error of a fair and impartial trial."

Sharlene Johnson was not shown to have been connected in any way with the prior shop-lifting conviction of Juanita Smith. The trial court let the evidence in, and permitted the jury to convict Smith as a second offender. Whether or not this was permissible, as to Smith, has been rendered moot by her death.

The objection was based upon the fact that the prior conviction was for a misdemeanor, and it is contended that such evidence of a prior misdemeanor conviction of a defendant is inadmissible. Such is not the law. Once a defendant testifies, his or her credibility as a witness becomes an issue in the case. Such evidence, attacking the character of the defendant-witness, is admissible on the issue of credibility. And evidence of other crimes or misconduct may be introduced to show (1) motive, (2) guilty knowledge, (3) intent, or (4) identity. McGowen v. State, 221 Tenn. 442, 427 S.W.2d 555. This assignment is overruled.

The remaining assignments of error are directed at various jury arguments made by the prosecuting attorney. We have carefully examined the record and find no error

requiring reversal. See Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758.

The judgment of the trial court is affirmed.

MITCHELL and GALBREATH, JJ., concur.