# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### APRIL 1999 SESSION



**FILED**

**August 5, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | ) | |
| | ) | C.C.A. No. 02C01-9806-CC-00184 |
| Appellee, | ) | |
| | ) | Henry County |
| v. | ) | |
| | ) | Honorable Julian P. Guinn, Judge |
| **GREGORY JOE WINSTON**, | ) | |
| | ) | (Arson, Aggravated Burglary, |
| Appellant. | ) | Theft of Property) |

<u>FOR THE APPELLANT</u>:

**GUY T. WILKINSON**
District Public Defender

**W. JEFFERY FAGAN**
Assistant District Public Defender
117 North Forrest Avenue
Camden, TN 38320

<u>FOR THE APPELLEE</u>:

**PAUL G. SUMMERS**
Attorney General & Reporter

**PATRICIA C. KUSSMANN**
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

**G. ROBERT RADFORD**
District Attorney General
111 Church Street
P. O. Box 686
Huntingdon, TN 38344-0686

**STEVEN L. GARRETT**
Assistant District Attorney General
P. O. Box 94
Paris, TN 38242

**OPINION FILED:** _____

**AFFIRMED**

**L. T. LAFFERTY, SENIOR JUDGE**

## O P I N I O N

The defendant, Gregory Joe Winston, appeals as of right from his convictions by a Henry County jury of arson, aggravated burglary, and theft of property over $10,000. As a result of these jury verdicts, the trial court imposed sentences of eight years for arson, eight years for aggravated burglary, and five years for theft of property, as a Range II, Multiple Offender, to run concurrently in the Department of Correction. The defendant presents two appellate issues:

1. Whether or not the evidence was sufficient as a matter of law to sustain the conviction in this case.

2. Whether or not the trial court erred in not granting the defendant's motion for judgment of acquittal at the end of the state's case in chief.

After a thorough review of the trial record, briefs of the parties, and the appropriate law, we affirm the judgments.

## FACTUAL BACKGROUND

On August 4, 1997, Detective Eddie Crosser, Henry County Sheriff's Department, testified he was notified of a fire involving a mobile home at 920 Cherry Island Road. At the scene of the fire, Detective Crosser met Mr. Rick Jones, the owner of the residence. Detective Crosser observed that a late model mobile home had been completely burned inside and out, and an attached wooden deck had partially burned. Missing from the deck was a gas grill, wrought iron chairs, and table. Also missing from the mobile home were a couch, golf clubs, and other household items. Detective Crosser contacted Jessica Shannon, state fire marshall, for assistance in a possible arson.

Detective Crosser testified that Jimmy Jordan, Investigator for the Jackson Police Department, contacted him indicating that he might possibly have some information regarding an arson and burglary that had occurred. Detectives Crosser and Jordan proceeded to the defendant's home on 414 Forrest Street in Jackson, Tennessee.

2

Detective Crosser observed the defendant sitting on a rear patio in a wrought iron chair, next to a wrought iron table. Detective Crosser had photographs of the missing items from the Jones's mobile home, and the wrought iron chair and table matched the description of the Jones's missing table and chairs. Next to the side of the table was a gas barbeque grill, matching the one missing from the Jones's. Detective Crosser obtained a written statement from the defendant. In his statement, the defendant related:

> On Saturday, August the 2nd, 1997, I left my house in Jackson at 6:30 p.m. with a girl named Amy. She dropped me off in Paris at the Foxy Lady, and she went on to Paris to see friends. Dan Kaufman came in later, then left for about thirty minutes and came back with some dope. Dan left about 10:00 p.m. and Amy picked me up at 11:00 p.m. and took me to the Huddle House, and we ate breakfast. Then she took me home. I then took the company truck and went to Platinum Plus in Jackson, Tennessee. I got there about 2:00 [a.m.] and left about 5:30 [a.m.] -- or a.m. And I got home around 7:30 a.m.

> On Sunday, August 3rd, 1997, Dan Kaufman came by my house at about 9:30 a.m. and told me to come outside, that him and his girlfriend had broke up and he wanted to sell all his stuff. I bought a gas grill and a lawn iron table and two chairs for fifty dollars for all of it. He had a lot of other furniture on the trailer. Clay bought the couch and Raymond Holland bought the trailer. Dan unloaded the trailer and sat a washer and dryer beside the house and some other stuff. Someone came back later and got the washer and dryer and the other stuff. A man named Lee bought the golf clubs for one hundred dollars.

As part of his investigation, Detective Crosser said that a truck was seen in Paris backing up to a trailer which was stolen. An unknown person had obtained the license number on the truck. Detective Crosser learned the defendant was driving a company truck owned by his employer, Thomas R. Mitchell Construction Company, and this was the truck seen in Paris. Detective Crosser testified that he had no physical proof, fingerprints, or eyewitnesses placing the defendant at the scene of the fire. Also, Detective Crosser had no proof that the company truck and trailer were at the mobile home.

Patricia Diane Huffman, wife of Rick Jones, testified they owned a weekend residence at 920 Cherry Island Road. At 5:50 a.m. on August 3, 1997, Rick's aunt called stating their trailer had burned. When she and her husband arrived at the property, she

noticed the gas grill, a wrought iron table, and two chairs were missing. Huffman testified the only thing left standing was about half of the deck. Several other household items were missing from the home, such as a specially made couch, a microwave, her husband's golf clubs, and the kitchen wicker table and chairs. Some of these items were returned to them when they were recovered by law enforcement officers. Huffman estimated their total damage loss at fifty thousand dollars. She did not know the defendant or Dan Kaufman.

Rick Jones testified that he observed his burned trailer and verified his golf clubs, patio chairs, and table were gone. Jones did not know the defendant or Dan Kaufman.

Jessica Ann Shannon, a state fire marshall, testified that, on August 5, 1997, she observed the totally destroyed trailer belonging to Rick Jones. Ms. Shannon estimated the fire began at approximately 1:30 a.m. on August 3, 1997, since the Paris Landing Volunteer Fire Department received the call at 1:59 a.m. Ms. Shannon determined the origin of the fire was arson. In her investigation, Ms. Shannon found the electrical circuit box in good condition with no electrical problems. Ms. Shannon testified she found that an accelerant had been poured across the threshold of the floor leading to a glass sliding door, in the west wall, and out onto a large deck. Ms. Shannon did not obtain a sample of the accelerant, since it was obvious that one had been used. The fire was so hot that it melted the aluminum door frame. Ms. Shannon testified it takes 1,100 degrees to burn through aluminum. Ms. Shannon was not able to determine who set the fire through physical evidence. She estimated the driving time between the fire scene and Jackson, Tennessee, to be about an hour. Ms. Shannon testified she took sworn statements from several witnesses, including Mary Amanda Holland.

Thomas R. Mitchell, owner of Thomas R. Mitchell Construction, testified the defendant was his employee on August 1, 1997, and had been so for approximately three to four months. On August 1, Mr. Mitchell permitted the defendant to use a company truck, a maroon Ford 150 pick up, over the weekend since the person who normally drove it was away on National Guard duty. The defendant's vehicle had broken down. On Monday, Mr.

4

Mitchell saw the defendant on the job, and the first thing the defendant said concerned a trailer sold in his front yard on Sunday for two hundred dollars. Mitchell thought it was odd that this was the first thing the defendant said to him, and the defendant appeared nervous about the situation.

The company truck contained a cellular phone with the number 935-9323, and employees were permitted reasonable use of the phone. Using the phone records, Mr. Mitchell testified about calls made from this cellular phone over the weekend of August 1, 1997. Beginning on August 1 at 11:30 p.m. and into the early morning hours of August 2, five calls were made from this phone. On August 2, 1997, a roaming call was made at 11:30 p.m. to the Platinum Plus night club in Jackson, Tennessee. On August 3, 1997, two roaming calls at 1:03 and 1:19 a.m. were made to the Platinum Plus nightclub dressing room. Mitchell understood the defendant's girlfriend worked at Platinum Plus. When the truck was returned to Mr. Mitchell, the license plate was dented and had fresh paint on it. The left rear taillight was also broken. Mr. Mitchell testified that Dan Kaufman was a sub-contractor for his company, and Kaufman was the person who sold the trailer on August 3, 1997, according to the defendant. Mitchell identified from the phone records a phone call made to Dan Kaufman at 2:23 a.m. on August 3, 1997.

Officer Andy Bass, Paris Police Department, testified that at 11:45 p.m. on August 2, 1997, he received a call to go to the Four Seasons, a construction company in Paris, regarding a red pickup backing down into the company with its lights off and then leaving with a trailer. Officer Bass was also given a license plate number for the truck. The tag number was 136 RKT and was registered to the Thomas R. Mitchell Construction Company of Atlanta, Georgia.

Tony Dwayne Britton, testified he is an employee of Thomas R. Mitchell Construction Company. Britton had been on National Guard duty in Colorado for two weeks and returned to Jackson on August 2, 1997. On August 3, 1997, Britton and some friends were passing the Platinum Plus nightclub between 2:30 and 3:00 a.m., when he

5

saw his company truck in the lot with something in the back covered with plastic. Britton assumed the defendant had the truck.

Jimmy Ray Jordan, a detective with the Jackson Police Department, testified that he went to see Thomas R. Mitchell about his truck. After learning that the defendant had the truck over the weekend, Detective Jordan talked to the defendant and learned the trailer was at his home on Forrest Avenue. Jordan learned a Ray Holland had attempted to buy the trailer.

Clay Parker, an employee of Thomas R. Mitchell Construction, testified that he received a phone call on August 3, 1997, between 12:30 and 1:30 p.m. Parker went to the defendant's home. Upon arrival, Parker saw a car trailer loaded with a sofa, washer and dryer, and several other items. Parker believes he saw the golf clubs in the house. Parker testified he bought the sofa from Dan Kaufman for one hundred dollars. Kaufman then turned to the defendant and gave the defendant part of the money. Parker saw a trailer hitched to the company truck, which he unhooked so the person who bought it could leave. The defendant told Mr. Parker that he was making a deal to trade a transmission, battery, and some cash for the trailer.

Raymond Lynn Holland, testified he was at his sister's home, located next door to the defendant, on August 3. The defendant came over to Holland and inquired if Holland wanted some furniture. The defendant had a couch, a patio set, Nintendo games, and other items in the house. Holland testified he bought a trailer and agreed to put a transmission in the defendant's car as part of the deal. Holland testified that, on one occasion, he and some friends were at the Waffle House, when the defendant came over to them and said, "I was a dead man if I testified against him." Holland testified Dan Kaufman was at the house, and he was pretty sure it was the defendant who gave him a bill of sale for the trailer. Holland sold the trailer to a friend.

Mary Amanda Holland, testified she had known the defendant for about two years.

6

Ms. Holland, called "Amy," denied she had taken the defendant to the Foxy Lady in Paris on August 2, 1997, at 6:30 p.m. Ms. Holland also denied she picked up the defendant at 11:30 p.m. on August 2 and took him to the Huddle House for breakfast. However, during cross-examination, Ms. Holland testified that she had previously told defense counsel that she did take the defendant to Paris and later picked him up at 11:30 p.m. Ms. Holland testified that some law enforcement officers told her, "I was going to perjure myself, [and] do five years in prison." Ms. Holland admitted she had given a sworn statement to Jessica Shannon and that she told Shannon that she was not with the defendant on August 2. Holland also admitted telling Shannon the defendant came to her at some point after the fire and asked her to tell anyone who asked that she was with him that night. Ms. Holland is a good friend of Melanie Black, the defendant's girlfriend.

Bobbie Michelle Kee testified that her friend, Crystal French, brought the defendant to her home. Ms. French testified that the defendant said that he would give her eight hundred dollars if she went to court and testified on his behalf. The defendant wanted her to say that she worked at the Platinum Plus nightclub and went with a "Richard," who had a red pickup. The fabrication concerning "Richard" was to allow the defendant to get out of a situation relating to a trailer burning, and some stolen furniture.

Monica Sue Gant, testifying for the defendant, stated she had known the defendant for two and a half years. Ms. Gant saw the defendant at the Foxy Lady nightclub on August 2, 1997, between 7:45 and 8:30 p.m. The defendant came in alone and talked to a person called Dan. The defendant left the Foxy Lady about 11:20 to 11:40 p.m.

The defendant elected not to testify.

## LEGAL ANALYSIS

The defendant contends the inconsistencies in the state's case are such that there was not a showing of sufficient evidence to convict the defendant of arson, aggravated

burglary, and theft of property. The state counters that the evidence in the record supports the defendant's convictions.

When there is a challenge to the sufficiency of the evidence, the state is entitled to the strongest legitimate view of the proof at trial and all reasonable inferences which might have been drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn. 1978). A jury verdict, approved by the trial court, accredits the testimony of the witnesses for the state and resolves any conflicts in the evidence in favor of the state's theory. *State v. Williams,* 656 S.W.2d 405, 410 (Tenn. 1983), *cert. denied,* 465 U.S. 1073, 104 S. Ct. 1429, 79 L. Ed. 2d 753 (1984). This Court may neither reweigh nor reevaluate the proof offered at trial and must not substitute its inferences for those drawn by the trier of fact. See *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956), *cert. denied,* 352 U. S. 845, 77 S. Ct. 39, 1 L. Ed. 2d 49 (1965). The ultimate issue is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Tenn. R. App. P. 13(e).

It is well established that circumstantial evidence alone may be sufficient to support a conviction. *State v. Buttrey,* 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, the circumstantial evidence "must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt...." *State v. Tharpe,* 726 S.W.2d 896, 900 (Tenn. 1987) (quoting *Pruitt v. State,* 3 Tenn. Crim. App. 25, 267, 460 S.W.2d 385, 390 (1970)). In this way, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he [the defendant] is the one who committed the crime." Id. at 900 (quoting *Pruitt,* 3 Tenn. Crim. App. at 267, 469 S.W.2d at 390). While following these guidelines, we must note that the jury decides the weight to be given to circumstantial evidence and that "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State,* 203 Tenn. 440, 452, 313 S.W.2d 451, 457 (Tenn. 1958), (quoting 2 Wharton's Criminal Evidence 1611 (year omitted)).

A clear analysis of the evidence in this record reveals the state's proof is wholly circumstantial. Therefore, we must determine if the evidence weaves a web of guilt around the defendant from which he cannot escape.

The state had proved beyond a reasonable doubt that the mobile home of Rick Jones was burned from an incendiary nature. Prior to the burning, the home was burglarized and certain household items were taken. On the same day of the fire and burglary, a gas grill, wrought iron chairs and table, golf clubs, a couch, and other items were seen at the defendant's home. Also, a trailer stolen from a business in Paris, Tennessee was seen at the defendant's residence loaded with the stolen property. Although in his statement to Detective Crosser, the defendant stated the furniture belonged to Dan Kaufman, the evidence clearly establishes these items came from the burned home of Rick Jones. The defendant was seen taking money from Kaufman from the sale of some of these items.

The testimonies of Mary Amanda Holland and Bobbie Michelle Kee are strong indications of the consciousness of the guilt that the defendant possessed for these offenses. Holland testified that the defendant attempted to elicit her help in establishing an alibi for the early morning hours of August 3, 1997. However, Holland, reluctantly, would not support this alibi. Kee testified that the defendant attempted to produce perjured evidence before the jury. The record establishes the defendant was in Paris, Tennessee on the night of August 2, 1997, and a trailer was seen at approximately midnight being stolen from a construction company with the use of the defendant's company truck. The fire and burglary occurred at 1:30 a.m. on August 3, 1997. The evidence reveals it takes approximately an hour to drive from Paris to Jackson, Tennessee. The next morning the trailer with the stolen items was seen at the defendant's home, where several items were sold by the defendant and Dan Kaufman. We find that the evidence was sufficient to convict the defendant of arson, aggravated burglary, and theft of property.

The defendant also contends that the trial court erred in failing to grant his motion

for a judgment of acquittal at the conclusion of the state's case in chief. The state maintains the trial court properly denied the defendant's motion for an acquittal.

A defendant may move the trial court for a motion for judgment of acquittal at the conclusion of the state's case in chief, pursuant to Rule 29(a), Tenn. R. Crim. P:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is **insufficient** to sustain a conviction of such offense or offenses.

The trial court, in this instance, overruled the defendant's motion for a judgment of acquittal. At the point the motion is made, the trial court must favor the state with the strongest legitimate view of the evidence, including all reasonable inferences and discard any countervailing evidence. *State v. Anderson,* 880 S.W.2d 720, 726 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1994) (citing *Hill v. State,* 4 Tenn. Crim. App. 325, 470 S.W.2d 853 (1971)). We hold that our analysis of the entire record on the issue of sufficiency of the evidence is applicable to this issue. Taken as whole, the record establishes the trial court was justified in denying the defendant's motion for a judgment of acquittal.

In consideration of the foregoing and the record as a whole, the judgments of conviction are affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
DAVID G. HAYES, JUDGE