JOHNSON *v.* STATE.

(*Knoxville*, December Term, 1948.)

Opinion filed December 11, 1948.

RALPH V. REED, FRANK H. DRINNEN and J. N. BADGETT, JR., all of Maryville, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from conviction of voluntary manslaughter and sentence to punishment at two to five years in the penitentiary for the offense.

The assignments of error present three questions:

(1) That the evidence was insufficient to support the conviction and preponderated in favor of the defendant's plea of self-defense; (2) that the Trial Judge erred in refusing a special request tendered by the counsel for defendant; and (3) that the indictment was fatally defective in that it charged no offense under the laws of the State of Tennessee.

On the day of the killing a number of white people were gathered drinking and dancing at the home of a Negro, Joe Cox, in Blount County. The day was Sunday, October 12, 1947. When the deceased, Arthur Cutshaw, who was the divorced husband of the defendant, came to Cox's house looking for her, she hid in a closet until he had left. It is in evidence that she was afraid to be found by the deceased at Cox's place, because he had threatened her with bodily harm if he found her there. After the defendant emerged from the closet where she had hidden, she informed her friends that she had run away from Arthur Cutshaw for the last time, and to emphasize this declaration, she went out to a parked car, secured a pistol and carried it until the shooting. Some two or three hours later Cutshaw returned to Cox's place and found defendant. He cursed and abused her and accused her of illicit relations with Negroes.

According to the State's witness, Willocks, when this took place, the defendant was armed with a pistol which she was carrying either in her hand or in the pocket of the overalls which she wore. According to defendant, during the quarrel with Cutshaw, she got the pistol from the couch where she had hidden it. The evidence is conclusive that both the defendant and the deceased were drinking at the time of the occurrence. It is also clear that the defendant and the deceased struggled from the kitchen into the dining room, and that the defendant shot the deceased twice and fired a third shot which went wild into the ceiling of one of the rooms in the house.

The defendant says that she shot in her own necessary self-defense and because she was in fear of her life or great bodily harm, when the deceased ceased his physical assault upon her, and put his right hand into the

pocket of his trousers where she knew he carried a knife. There is absolutely no evidence that the deceased had a knife or that he actually tried to use such a weapon on the defendant. So, clearly, it was for the jury to say on the defendant's own testimony, taking into consideration all the surrounding facts and circumstances, whether the defendant shot the deceased after he had ceased his assault upon her or whether the shooting was in her own necessary self-defense.

▮ It is the exclusive province of the jury and Trial Judge to determine the credibility of the various witnesses. It is not only not our duty, but it is impossible for us to do this when, as here, the transcript of the evidence is submitted in narrative form.

▮ After her conviction, the defendant is here under a presumption of guilt and we think the conviction was fully warranted, not only on the testimony of the defendant, herself, but on that of Leonard Willocks and "Chuck" Martin, who testified for the State. The assignments of error which assail the sufficiency of the evidence are overruled.

▮ The next question presented by the appeal is the refusal of the Trial Judge to charge the following special request:

"The defendant in a Criminal Trial, however *degraded* or *debased* she may be, and no matter what may be the enormity of the crime charged against her must always be presumed innocent of the crime for which she is indicted until her guilt is proved beyond a reasonable doubt."

In his general charge, the Trial Judge had instructed the jury fully, that the accused was presumed to be innocent and was not presumed to be guilty of any offense,

and that this presumption stood as a witness until overturned by credible proof. Not only did the general charge cover the subject matter of the special request, but we think that the giving of the special request would have been prejudicial to the defendant because it contained an implied finding by the Trial Judge that the defendant was degraded and immoral. Since the matter of the special request was fully covered by the general charge, we find no merit in this assignment and it is overruled.

■ Finally, it is insisted that the indictment was fatally defective because of the following ungrammatical phrases:

". . . she the said Stella Johnson *he* the said Arthur Cutshaw then and there did unlawfully, feloniously, wilfully, deliberately, premeditatedly, and of *his* malice aforethought kill and murder, against the peace and dignity of the State of Tennessee." (Italics ours.)

The assignment of error is without merit for two reasons:

(1) There was no challenge to the indictment in the lower Court, nor action thereon by the Trial Judge. This was necessary to support the assignment of error on appeal. *Palmer* v. *State*, 121 Tenn. 465, 118 S. W. 1022; *Webb* v. *State*, 173 Tenn. 518, 121 S. W. (2d) 550; *Troxell* v. *State*, 179 Tenn. 384, 166 S. W. 2d 777.

■ (2) The use of the masculine pronoun for the feminine, and of the nominative for the objective case of the pronoun did not so obscure the meaning as to prejudice the rights of the defendant, and this is manifest from the fact that no objection was made to the indictment at the time it was read, and grammatical errors in the

indictment did not affect the result nor constitute reversible error. Code sec. 10654; *Scott* v. *State*, 75 Tenn. 232, 234; 42 C. J. S., Indictments and Informations, sec. 319, pp. 1348, 1349.

Affirmed.

All concur.