DRISCOLL *v.* STATE.

(*Nashville,* December Term, 1949.)

Opinion filed July 15, 1950.

Thomas Haile, of Cookeville, for plaintiff in error.

Nat Tipton, Assistant Attorney General, for the State.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This appeal is from a conviction of abduction of an eighteen year old girl who is named in the indictment for the purpose of prostitution, Code Section 10790, with the maximum punishment fixed at five years' imprisonment.

After Driscoll had entered a plea of not guilty and the jury had been impaneled, he made a motion to quash the indictment because it failed (1) to charge that this girl was in the legal custody of her parents, or (2) that she was an unmarried person, or (3) that she was under twenty-one years of age. The action of the Court below in overruling this motion is assigned as error.

The statute which Driscoll is convicted of having violated does not recite that the abducted female must be an unmarried person and under twenty-one years of age. These are exceptions to the statute, and may be interposed as a matter of defense. However, insofar as the indictment is concerned, it is sufficient to charge the offense in the language of the statute. It is not necessary to aver such exceptions. *Griffin* v. *State*, 109 Tenn. 17, 70 S. W. 61.

The statute does expressly provide that the female must be taken from the person "having the legal charge of her". This indictment is defective, but not void, in that it omits the language just quoted and avers instead that Driscoll took this daughter "from her father" etc. The question is whether the defect was waived by delaying the making of the motion to quash until after a plea of not guilty and the impaneling of the jury.

It is a settled rule that where the defendant pleads to the indictment and goes to trial upon the merits the defect is cured by the verdict. *Pope* v. *State,* 149 Tenn. 176, 179, 258 S. W. 775. We have been unable to find any case in our reports where the motion to quash was made before the taking of evidence was commenced, but after the plea of guilty had been entered and the jury impaneled. The weight of authority, however, seems to be that a motion coming at this time is too late where the complaint is made as to a defective statement of an accusation in the indictment, rather than as to an indictment which charges no offense. 27 American Jurisprudence, 732-733. 42 Corpus Juris Secundum, Indictments and Informations Section 199, page 1169. The exact question arose in the North Carolina case of *State* v. *Gibson,* 221 N. C. 252, 20 S. E. (2d) 51. There the Court held that a motion to quash "made by a defendant after defendant had pleaded not guilty and after the jury had been selected and impaneled" came too late, or rather, that it was a matter within the discretion of the trial judge with the exercise of such discretion not reversible on appeal. We think this holding is a correct statement of the law, and so hold.

At the close of the State's evidence there was a request by the Attorney General that this girl be allowed to remain in the Courtroom during the presentation of the defendant's evidence. The action of the Court in permitting this over the objection of the defendant is assigned as error. She was never recalled as a witness. Therefore, in any view of the matter, this did not prejudice the defendant.

There appears in the record the affidavit of one Eugene Dillon said to have been filed in support of the

motion for a new trial and alleged to have been evidence which was not within the knowledge of the defendant or his attorneys until some time after the trial. In that affidavit Dillon states that he became acquainted with this girl in the autumn of 1948 and went with her on several occasions and had sexual intercourse with her on each of these occasions, except one. It is insisted that a new trial should be granted because of this newly discovered evidence.

The Dillon affidavit is not made a part of the bill of exceptions but does appear in the record. When an affidavit is not made a part of the bill of exceptions though copied into the record it cannot be considered on the appeal for any purpose. *Faust* v. *Echols,* 44 Tenn. 397; *Holder* v. *State,* 119 Tenn. 178, 228, 104 S. W. 225.

The insistence as to improper prejudicial argument by special counsel assisting the Attorney General cannot be considered because no part of that argument appears any where in the bill of exceptions.

Considering next the insistence that the evidence preponderates against the verdict, it is clearly shown and without dispute that in the very late afternoon of January 18, 1949 plaintiff in error and this girl left her father's home near Cookeville in his car and drove to a cabin beyond Knoxville where they spent the night and then went into North Carolina and Georgia and back into Putnam County where at a point a few miles from Cookeville she was let out of his car on the highway near the home of a relative by marriage. They were gone for two days and during this time engaged in a number of acts of sexual intercourse, according to the testimony of the girl. This trip was taken without the consent or

knowledge of her parents with whom she was living at the time.

Plaintiff in error did not testify. The defense made in his behalf was that this girl was not living a chaste and virtuous life at that time, and that insistence is made on this appeal.

The girl testifies that she had never met Driscoll until the day in question, but that she had seen him once at her father's home where he had gone for the purpose of transacting some business with her brother. She says that on the day of the evening that she started this trip with him he came to the laundry where she had been working for two years and said to her that he had in mind an office job which he could procure for her, and proposed to take her that day for a conference with the person who was supposed to give her this new employment. This resulted in an understanding between them that he would come to the laundry at the end of her day's work, take her home to change clothes and then to the person with whom she was supposed to confer about this job. She apparently made no inquiry as to who was going to employ her or where the place of employment was.

Pursuant to this arrangement they left her father's home between 5 and 6 o'clock in the afternoon. She took along some thirty odd dollars. After stopping in Cookeville, apparently to get dinner, the drive continued until, according to her testimony, they reached a point a few miles out of Cookeville. There he stopped the car and while displaying a pistol said to her ''I have been watching you for five or six months; I have been waiting for this a long time; now I have got it''; that he then and there forced her to indulge in two acts of sexual

intercourse with him and forced her to accompany him to this cabin beyond Knoxville and into North Carolina and Georgia, thence back to Putnam County; that during this trip he forced her to engage in these illicit relations on a number of occasions. Her testimony is that she "had never had sexual relations with any man or boy" before this, and that she is in the habit of going to Church.

James Dowler and Atrell Stovell, nineteen year old boys, were called as witnesses by the defendant and each testified to having had sexual relations on several occasions with this girl. Dowler's testimony is that his illicit relations with her commenced "right after Christmas" of 1948. When pressed for a more definite fixing of the time he said that he "imagined" that it was about a month after December 23, 1948. The abduction was on January 18, 1949. Stovell, the other young man, said that his relations with her commenced "some time between September and the last of December" of 1948.

Dowler says that he did not know the girl until the night that these illicit relations commenced, but that he "had heard fellows talk"; so he went out to her house, introduced himself, and "told her to get a coat on, we were going out, and we went out". He says that their illicit relations began on this occasion. Stovell said on cross-examination that he had not told any one about his intimacy with the girl and was at a loss to know how the defendant or his attorneys found it out.

There is no denial by the girl of the truth of the testimony of these two young men other than as such denial is inferred from the fact that during the presentation by the State of its evidence in chief, she testified that she "had never had sexual relations with any man

or boy'' prior to this affair with plaintiff in error, Driscoll. During the presentation of evidence by the State she testified in response to cross questions that both of these boys had been in her home, and that she had a few dates with each of them, and that they were nice boys, in so far as she knew.

Mrs. Jim Ramsey testified that she lived next door to the home of the girl's parents and that within the past year on one occasion in the day time while she was sitting on her own porch there passed on the highway an automobile in which the girl was riding in the back seat with a young man and that she was ''in this guy's arms''. This lady said that on another occasion in the afternoon while she was milking she saw her get in the car with a young man and then and there saw them do ''a little necking''. This testimony of Mrs. Ramsey was elicited on cross-examination by the State.

Three ladies who lived in the community testified that the reputation of this girl is ''pretty bad'', and so ''currently reported in the community''. They did not say to what particular trait they referred. One of these witnesses was a next door neighbor. No attempt was made to offer countervailing testimony as to her reputation.

Assuming it to be a reasonable inference that this girl, an intelligent eighteen year old who had worked for the public for at least two years, necessarily realized that Driscoll's intentions were evil when she responded to his very unusual invitation to accompany him for the supposed purpose of getting a job, nevertheless, that inference does not bring it about that Driscoll is not guilty of the statutory offense for which he stands convicted, provided this girl was living a chaste life at that time. Compare *South* v. *State,* 97 Tenn. 496, 500-501,

37 S. W. 210. He is in this Court under a presumption of guilt and upon him rests the burden of establishing by a preponderance of the evidence that she was not living such a life at that time.

If the testimony of the two nineteen year old boys as to their allegedly illicit relations with the girl is true, then Driscoll is not guilty of the offense for which he stands convicted, notwithstanding the reprehensible quality of his conduct. *Jenkins* v. *State,* 83 Tenn. 674. He is guilty, if that testimony is false. It necessarily follows that the controlling rule in this case is the rule applicable in this Court with reference to the acceptance or rejection in whole or in part of the testimony of the witnesses.

Time and again it has been pointed out in the opinions of this Court that the credit attributable to the testimony of a witness is a matter for jury determination, and that when it has determined that question, and the Trial Judge has concurred, the result is practically conclusive in this Court under the circumstances presented by this record.

In the instant case the jury and the Trial Judge have rejected as false the testimony of these two boys upon whose testimony the guilt or innocence of this man must finally be determined. We are not able to say that their action was arbitrary. Hence, the jury's determination, concurred in by the Trial Judge, of the credibility of the testimony of these two boys is conclusive under this record, and makes it necessary to reject the insistence that the evidence preponderates against the verdict.

Judgment affirmed.

All concur.