**ATLAS ROOFING MANUFACTURING COMPANY, Inc., et al., Appellants,**

v.

**Charles W. PARNELL, Appellee.**

**ATLAS ROOFING MANUFACTURING COMPANY, Inc., et al., Appellants,**

v.

**GLOBAL VAN LINES, INC., Appellee.**

**Nos. 25870, 25871.**

United States Court of Appeals
Fifth Circuit.

April 10, 1969.

Jack J. Hall, Robert E. Parsons, Birmingham, Ala., for appellants; Baker, McDaniel & Hall, Birmingham, Ala., of counsel.

Edward L. Hardin, Jr., Alex W. Newton, Birmingham, Ala., for appellees; Hare, Wynn, Newell & Newton, Birmingham, Ala., of counsel.

Before BROWN, Chief Judge, THORNBERRY, Circuit Judge, and TAYLOR, District Judge.

THORNBERRY, Circuit Judge:

On the evening of August 17, 1965, a tractor-trailer unit owned by Plaintiff-Appellee Global Van Lines and driven by Plaintiff-Appellee Charles Parnell was heading north on U. S. Highway 11 when it collided with the east side of a bridge just outside Epps, Alabama, went through the railing, and fell about twenty-five feet. According to Parnell, who sustained serious personal injuries, the collision was caused by the negligence of Horace Huguley, who was crossing the bridge from the opposite direction in a tractor-trailer unit owned by Appellant Atlas Roofing. Parnell testified that he was crossing the bridge at thirty to forty miles per hour, which was within the speed limit, when he saw the oncoming truck being driven slightly on the wrong side of the white center line dividing the two-lane highway. The highway was about twenty feet wide. He jerked his wheels to the right, got just past the oncoming truck without colliding, but then hit the railing on the east side of the bridge. Trial to a jury resulted in a $25,000 verdict for Parnell for injuries, medical expenses, and lost earnings and a $10,000 verdict for Global Van Lines for damages to its rig.

 Appellants' first and least persuasive specification of error is that they were prejudiced by the failure of two jurors to disclose on *voir dire* that they were involved in lawsuits in which damages were claimed for personal injuries or property damage. Since both of these jurors were personally involved in damage suits *as defendants*, we are unable to accept the thesis that they

might have been prejudiced against the defendants in this case. The motion for new trial on this ground was properly denied.

The next specification of error relates to the statutory disqualification of a juror and is more difficult to answer to the question propounded by the trial judge on *voir dire*, "Has anyone of you been convicted in a Federal court of record of a crime punishable by imprisonment for more than a year?", there was no response from any juror though, in fact, of the jurors who tried the case had pled guilty to distilling whiskey 1946 and been given a probated sentence of one year and one day.[1] By motion for new trial, appellants urged that they were denied the protection of 28 U.S.C. § 1861(1), which provides the following exception to the general class of citizens qualified to serve as grand or petit jurors in federal courts:

> Any citizen of the United States who has attained the age of twenty-one years and who has resided for a period of one year within the judicial district, is competent to serve as a grand or petit juror unless—
>
> (1) He has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.[2]

But since the statutory disqualification of a juror was not raised by appellants until after the verdict and since there is no indication that the presence on the jury of a man who had been convicted of distilling whiskey twenty years before resulted in actual prejudice to appellants, the matter comes squarely within the holding of a prior Fifth Circuit case:

> While previous conviction of a felony does not render the convicted person fundamentally incompetent to sit as a juror, it is a ground for challenge for cause, which the defendant may insist upon or waive, as he elects. If not seasonably exercised, the objection is waived. It is the right and duty of a defendant to discover on *voir dire* examination, or from other sources, whether a talesman is subject to disqualification for cause. Where the objection to a juror relates, not to actual prejudice or other fundamental incompetence, but to a statutory disqualification only, such disqualification is ordinarily waived by failure to assert it until after verdict, even though the facts which constitute the disqualification were not previously known to the defendants. The objection based upon the previous felony convictions comes too late after verdict, no actual bias or prejudice being shown.

Ford v. United States, 5th Cir. 1953, 201 F.2d 300, 301. In *Ford*, the possibility of actual prejudice was much greater than here because the juror in question had two felony convictions plus five other convictions for violation of municipal ordinances other than traffic ordinances. Nevertheless, the Court held that there was no showing of prejudice and that in the absence of such a showing the failure to raise the statutory disqualification of a juror until after the verdict was fatal. Attempts to distinguish the instant case from *Ford* are futile.

We requested and counsel furnished supplemental briefs on the applicability

---

1. The failure to disclose could have been an innocent mistake if the juror understood the trial judge to be asking whether anyone had actually served a year or more in prison. On the other hand, it is possible that he was simply too embarrassed to acknowledge in open court the moonshine conviction in his distant past.

2. The other two exceptions to the general qualifications set forth in section 1861 are that a person is disqualified if "he is unable to read, write, speak, or understand the English language" or if "he is incapable, by reason of mental or physical infirmities to render efficient jury service" [28 U.S.C. § 1861(2) and (3)].

1194

of Rabinowitz v. United States, 5th Circuit 1966, 366 F.2d 34, decided by the Fifth Circuit sitting *en banc*. There we held that the Judicial Code of 1948, as amended in 1957, prescribed uniform qualifications for federal jurors allowing in their application no discretion on the part of court clerks and jury commissioners. Since the court officials in question had compiled jury lists on the basis of their own ideal of a competent juror, in effect adding to the uniform statutory qualifications, we held that the federal statutory scheme had been violated. Accordingly, the convictions of the defendants before the Court were reversed and the indictments against them dismissed. To be sure, that case really involved the under-representation of Negroes on jury lists, but nevertheless it stands for the proposition that the qualifications set forth in 28 U.S.C. § 1861 are uniform, not maximum or minimum, and do not allow for the exercise of any discretion by court officials. A second ground for the decision was that the method used by court officials to obtain the names of prospective jurors violated the statutory scheme in that it was not calculated to produce a fair cross-section of the community.

These two bases for the decision afford at least two approaches to the question presented in the case at bar. First, it could be argued that *Rabinowitz* makes absolutes out of the statutory qualifications and therefore that any jury is fatally defective if one or more of the members is subject to statutory disqualifications. A second possible argument would be that a jury list is fatally defective if court officials have not followed the federal statutory scheme by taking steps to exclude disqualified persons. Put another way, the argument might be made in this case that the method used by court officials to obtain the names of prospective jurors was deficient because it did not include safeguards against persons disqualified from jury service because of a criminal conviction.[3]

Without deciding the merits of either of the arguments we have posed, we conclude that so far as this case is concerned *Ford* and *Rabinowitz* do not point in different directions. *Ford* holds that in the absence of actual bias or prejudice an objection based on the statutory disqualification of a juror is untimely made for the first time after the verdict; on the matter of timeliness, *Rabinowitz* is not to the contrary because in the cases consolidated for that appeal timely objections had been made in the form of motions to dismiss the indictments and motions to quash the petit jury panels. While the question of when an objection to the array must be made was not before the Court in *Rabinowitz*, other decisions make it clear that in the absence of actual bias or prejudice an objection to the composition of the grand or petit jury panel comes too late after the verdict. Shotwell Mfg. Co. v. United States, 1963, 371 U.S. 341, 362, 83 S.Ct. 448, 461, 9 L.Ed.2d 357; Stewart v. Banks, 5th Cir. 1968, 397 F.2d 798; Jackson v. United

---

3. From what appellee has told us, this second argument could not be advanced successfully in the instant case because the jury commissioners in the Northern District of Alabama have always taken reasonable precautions to exclude persons disqualified from jury service because of a criminal conviction. Under the new jury plan for the Northern District of Alabama, a prospective juror must pass through three different screenings as to his statutory qualifications. First, the names of prospective jurors are taken from voter registration lists and the same criminal record which will disqualify one from jury service will disqualify one from voting. Second, people whose names are taken from the voter lists are sent questionnaires which also ask about prior convictions. Finally, the trial judge asks the same questions on *voir dire*. Appellee says, and it is not denied, that essentially the same precautions were taken before the new jury plan went into effect so that at the time this case was tried the method used to select jurors not subject to statutory disqualification could not be said to be defective.

States, 5th Cir. 1968, 394 F.2d 114. Jackson v. United States holds that an objection to the composition of the jury list comes too late when made for the first time after the verdict in a criminal case, and Stewart v. Banks applies the same rule to civil cases. Thus, whether the challenge be to the entire array or to an individual juror, it must be asserted before the verdict. The motion for new trial based on the statutory disqualification of a juror was properly denied.

■ Finally, appellants contend that their motion for judgment notwithstanding the verdict should have been granted because Parnell was contributorily negligent as a matter of law. Through the testimony of Huguley and a police officer, appellants attempted to show that the accident was Parnell's fault either because he was driving too fast or because he jerked his wheels to the right when there was no necessity for doing so. Parnell, on the other hand, testified that he was not driving too fast and that his collision was entirely the result of Huguley's forcing him to the right and into the railing by driving on the wrong side of the road. To our minds, this was a factual dispute for the jury to resolve. To show contributory negligence as a matter of law, appellants rely on Teague v. Alabama Coca-Cola Bottling Co., 1923, 209 Ala. 205, 93 So. 883. As the Supreme Court of Alabama viewed the plaintiff's own testimony, plaintiff was forced off the right-hand side of the road by an oncoming vehicle driving on the wrong side of the center line. After he got his car past the oncoming car in safety and got back on the road, he unaccountably oversteered to the left, drove off the left-hand side of the road, and turned over. As the state court viewed the evidence in the light most favorable to plaintiff, his own negligence intervened between the defendant's negligence and the accident. _Teague_ is therefore distinguishable from the case at bar because here Parnell's negligence was a disputed fact issue for the jury to resolve. Parnell's testimony, if believed, entitled plaintiffs to a favorable verdict.

No other errors having been alleged, the judgment of the district court is affirmed.