STATE OF TENNESSEE ex rel. WILLIE LEE HENDERSON, Petitioner, v. LAKE F. RUSSELL, Warden, Respondent.

459 S.W.2d 176.

Court of Criminal Appeals of Tennessee. July 6, 1970.

Certiorari Denied by Supreme Court Sept. 8, 1970.

Robert F. Hedgepath, Nashville, for petitioner.

George F. McCanless, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Robert S. Brandt, Asst. Dist. Atty. Gen., Nashville, for respondent.

## OPINION

WALKER, Presiding Judge.

The petitioner below, Willie Lee Henderson, appeals from the dismissal of his petition for habeas corpus after an evidentiary hearing.

The petitioner, a Negro, has previously filed petitions in state and federal courts but he says that this is the first one raising the question that there had been systematic exclusion of his race from the grand jury which indicted him and the petit jury which convicted him.

In 1948 the petitioner, represented by retained counsel, entered a plea of guilty to murder in the first degree and was sentenced to 99 years in the penitentiary. He did not question the composition of the juries in the

trial court, either by motion or plea in abatement. He raises it now for the first time in this proceeding.

■ The petitioner was not convicted by a jury. He entered a plea of guilty voluntarily and with full understanding of its consequences. His plea of guilty was itself a conviction. Like the verdict of a jury, it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Brooks v. State, 187 Tenn. 67, 213 S.W.2d 7.

■ ■ After a voluntary plea of guilty, the right to have evidence presented to a jury to fix the punishment is a statutory one and does not rise to constitutional stature. State ex rel. Edmondson v. Henderson, 220 Tenn. 605, 421 S.W.2d 635; State ex rel. Barnes v. Henderson, 220 Tenn. 719, 423 S.W.2d 497. Likewise, the composition of a jury fixing the punishment on a plea of guilty raises no constitutional question.

Since the composition of the petit jury on a plea of guilty raises no constitutional question, the real issue is whether or not the defendant waived the right to challenge the grand jury which indicted him.

In State ex rel. Barnes v. Henderson, supra, the court said:

"On the subject of waiver it has been noted that:

'As a general rule, subject to certain exceptions, any constitutional or statutory right may be waived if such waiver is not against public policy. In fact, the trend of modern authority is in favor of the doctrine that a party in a criminal case may waive irregularities and rights, whether constitutional or statutory, very

much the same as in a civil case. Some jurisdictions, however, regard certain rights as nonwaivable in capital cases, or even in felony cases generally. * * *

'Where a constitutional right accorded the accused is treated as waivable, it may be waived by express consent, by failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it.' 21 Am.Jur.2d Criminal Law, § 219."

■ Under the criminal procedure in this state, objection to the venire or the indictment is deemed waived unless raised in apt time by motion or plea in abatement.

In State ex rel. Lawrence v. Henderson, Tenn.Cr.App., 433 S.W.2d 96, 101, this court said:

"If the defendant does not object by motion or plea in abatement, to the venire or to the jurors summoned under it, before he pleads to the indictment, an objection thereafter is too late."

See also Parker v. State, 2 N.C.App. 27, 162 S.E.2d 526 (1969), and Hamilton v. State of Alabama, 283 Ala. 660, 220 So.2d 267 (1969). In those cases, the Court of Appeals of North Carolina and the Supreme Court of Alabama held too late a claim in post-conviction proceedings that members of petitioner's race had been systematically excluded from the juries when no such question was presented at his trial.

The petitioner here participated as an actor in the order which he now seeks to set aside. After due and thoughtful consideration and after being properly advised by his retained counsel, he entered a plea of guilty to murder in the first degree and took the known sen-

tence of 99 years rather than take the calculated risk of receiving a more severe penalty at the hands of a jury. See Ray v. State, Tenn., 451 S.W.2d 854 (1970).

We hold that petitioner, acting through his employed attorney, waived any objection to the composition of the grand jury or the petit jury, by his failure to proceed in apt time to question them in the trial court.

Federal courts hold that objections to the racial composition of a grand jury must be raised before trial and may not be presented for the first time on a motion to vacate or by writ of error coram nobis. This rule offends no constitutional right.

In Bustillo v. United States, 421 F.2d 131, 132, (5th Cir.), the petitioner filed a 28 U.S.C.A. Sec. 2255 motion to vacate his sentence, claiming that the grand jury which indicted him was defectively constituted. Two years before this proceeding, he had entered a plea of guilty to bank robbery. Affirming denial of the motion without a hearing, the court said:

"Objections to the composition of a grand jury are governed by Rule 12(b) (2) of the Federal Rules of Criminal Procedure. Shotwell Manufacturing Company v. United States, 1963, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357. Rule 12(b) (2) provides that a defect in the indictment must be objected to by motion before trial and that failure to object at that time waives such a defense. Bustillo did not object before trial, or at any other time during the proceeding on the merits, to the composition of the grand jury which indicted him. His failure to do so constituted a waiver so that he may not now for the first time as-

sert such an objection. Scales v. United States, 1961, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782; Jackson v. United States, 5 Cir. 1968, 394 F.2d 114, 115; Perez v. United States, 5 Cir. 1962, 303 F.2d 441."

In Jackson v. United States, 394 F.2d 114, the Court of Appeals (5th Cir., 1968) considered an objection to the racial composition of the grand jury presented by writ of error coram nobis. It held:

"He is likewise barred from raising the question of the composition of the grand jury on the allegation of racial exclusion, being required by Rule 12(b) (2) of the Federal Rules of Criminal Procedure to allege such a defect by motion before trial, which he did not do then or at any other time during the proceeding on the merits. His failure to do so constitutes a waiver thereof so that he may not now, for the first time, more than two years after his trial, question the composition of the grand jury which indicted him, the Trial Judge having correctly held that he was in no way prejudiced."

In Atlas Roofing Manufacturing Company v. Parnell, 409 F.2d 1191 (5th Cir., 1969), the court said:

"In the absence of actual bias or prejudice, an objection to the composition of the grand or petit jury panel comes too late after the verdict."

By a state prisoner's habeas corpus proceeding in Hayes v. Wainwright, D.C., 302 F.Supp. 716 (1969), the petitioner claimed that Negroes were systematically excluded from serving on grand juries. Finding no merit in his contentions, the court said:

"In any event, petitioner having failed to raise an attack upon the grand jury's composition at the time of his trial cannot now raise the issue."

In Doyle v. State, Tenn.Cr.App., 458 S.W.2d 637 (cert. denied April 20, 1970), by post-conviction proceedings, the petitioner objected to the racial composition of the grand and petit juries which indicted and tried him. Speaking for the court, Judge Russell held:

"We hold, however, that his right to raise this question was waived when it was not raised upon the trial by motion or plea in abatement prior to his pleading to the indictment. Discrimination in the composition of venires has long been condemned in Tennessee. See Zanone v. State, 97 Tenn. 101, 36 S.W. 711. It has also been held in Tennessee, in a long line of cases, that unless a defendant objects by motion or plea in abatement to the venire before he pleads to the indictment he cannot thereafter avail himself of a claim that the venire was improperly composed. State v. Cole, 28 Tenn. 626; McTigue v. State, 63 Tenn. 313; Turner v. State, 89 Tenn. 547, 15 S.W. 838; Ellis v. State, 92 Tenn. 85, 20 S.W. 500. See also State ex rel. Lawrence v. Henderson, Tenn.Cr.App., 433 S.W. 2d 96. We do not believe that one should be permitted to raise a question in a post-conviction proceeding that was waived by failure upon the trial, by design or otherwise, to timely raise it when our procedural law prescribes that it should be raised. To permit this type procedure would make a sham of the trial itself. A defendant would not raise such questions upon the trial in the hope that he would be acquitted, but with the assurance that he could avail

himself of the complaint post-conviction to obtain a new trial. We hold that this question was disposed of upon the trial adversely to Doyle when it was not then raised. We are not dealing with a constitutional principle newly announced since his trial, but a right well recognized and protected at that time."

We held to the same effect in Burt v. State, Tenn.Cr. App., 454 S.W.2d 182 (cert. denied May 4, 1970).

From these authorities, it results that the judgment of the lower court dismissing the petition is affirmed.

GALBREATH, Judge (concurring).

I concur completely with Judge Walker's opinion. The law that failure to make an objection to the racial composition of a Grand Jury is waived unless raised by an appropriate pretrial motion is too well settled for this Court to disturb. I recognize the irrationality of the law as it applies to ancient cases of this type. No lawyer in this State would have ever thought of objecting to the fact that Negroes did not serve on the Grand Jury in Tennessee in 1948, just as scarcely anyone objected to the complete segregation of all public and private facilities of any kind in the State until the next decade. But the law is as set forth in Judge Walker's opinion; and it must be changed, if ever it is (and I personally believe it will be soon or late), by an authority higher than this Court.

OLIVER, Judge (dissenting).

I am unable to concur in the result reached by the majority. Some further discussion of this case is appropriate.

This is the same petitioner involved in the case of Willie Lee Henderson v. C. Murray Henderson, Warden, in which the Supreme Court of this State reversed the same trial court and remanded the case for an evidentiary hearing in an unpublished opinion filed November 3, 1967. In that opinion, the Court said:

"This is the second petition for the writ of habeas corpus filed by petitioner to reach this Court. The only allegation contained in the present petition, other than those disposed of by a unanimous opinion released on September 9, 1966, is a dogmatic statement there was a systematic exclusion of Negroes from serving on the grand and petit juries in Davidson County at the time of the indictment and petitioner's trial.

"The trial judge summarily dismissed the petition without a hearing.

"Petitioner has perfected an appeal to this Court and assigned as error the failure of the trial judge to hold an evidentiary hearing on the allegation of systematic exclusion of members of petitioner's race from the grand and petit juries in Davidson County.

"Respondent insists by his plea of guilty the petitioner waived his right to question the legality of the grand jury which indicted him and the petit jury which convicted him.

"A systematic exclusion of Negroes from jury service is a denial of due process of law as required by the Fourteenth Amendment to the Constitution of the United States. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.(2d) 991 (1958)..

'Where Negroes are systematically excluded from both grand jury which indicted a colored petitioner, and from the petit jury which convicted him, the judgment is unconstitutional and void.' Harris v. State of North Carolina [D.C], 240 F.Supp. 985 (1965); United States ex rel. Goldsby v. Harpole [5 Cir.,], 263 R.(2d) 71 (1959).

\* \* \* \* \* \*

"Evidence that none, or very few Negroes have served as jurors over an extended period of time will establish a prima facie case. United States ex rel. Goldsby v. Harpole, supra; United States ex rel. Seals v. Winan, 304 F.(2d) 53 (1962); Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964).

'While a full evidentiary hearing may not be warranted or proper for every petition for habeas corpus in this State, nevertheless, a petition alleging sufficient facts to establish that petitioner's conviction was void because of alleged denial of constitutional rights, federal or state, necessitates a trial of those facts under the aforesaid Act. The attack on a criminal judgment on the ground that it is void because of lack of constitutional due process deserves particular scrutiny.' State [ex rel. Reed] v. Heer, — Tenn. —, 403 S.W.2d 310 (1966).

"From the above principles, we think it was error for the trial judge to have summarily dismissed the petition. We think he should have appointed an Attorney to represent petitioner with leave to amend the petition to allege such facts, if possible, which, if proven, would support the allegation that members of his race were

systematically and deliberately excluded from the grand jury which indicted him and the petit jury which convicted him.

"The question of whether petitioner waived his right to raise the issue of systematic exclusion of members of his race by his plea of guilty is a question to be determined from the facts. United States ex rel. Goldsby v. Harpole, supra; United States ex rel. Seals v. Winan, supra."

The Supreme Court's judgment entered in that case included the following:

"This cause coming on to be heard upon a transcript of the record from the Criminal Court of Davidson County, assignments of error and reply brief, upon consideration whereof the Court is of opinion that in the judgment of the Court below there is error in that an evidentiary hearing was not granted plaintiff in error on the question of systematic exclusion of Negroes from the grand and petit juries in Davidson County at the time of plaintiff in error's indictment and trial."

Of course, we may take judicial notice of prior proceedings by the same petitioner. State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 376 S.W.2d 451.

After the remand the present petition was filed, the petitioner and appointed counsel evidently preferring to make a new start in view of the Court's language about appointing counsel to assist the petitioner in preparation of a factual petition. This case is now before us upon appeal from the trial court's judgment dismissing that petition following an evidentiary hearing as directed by

the Supreme Court. Upon the evidence introduced at that hearing there can be no doubt whatever that Negroes were deliberately and systematically excluded from the Grand Jury which returned the indictment against this petitioner, at the February 1948 Term of the Davidson County Criminal Court. He testified that at the time of his trial he was 20 years of age and was represented by an attorney employed by his mother; that he did not at that time have any knowledge concerning the methods of selecting people to serve on the grand or petit juries, or concerning his rights; that his attorney never talked to him about those matters or advised him concerning his rights to a properly constituted Grand Jury and petit jury; and that no Negroes were included in the Grand Jury which indicted him.

The judge who presided at Henderson's original trial, who served as a Criminal Judge in Davidson County from September 1, 1922 until his retirement on August 31, 1958, was called as a witness by the petitioner. He testified that he never placed a Negro on the Grand Jury, notwithstanding Negroes were called for jury duty; that the first Negro to serve on a Grand Jury during his tenure was Dr. H. H. Walker; that in 1947 the Legislature changed the jury law of Davidson County (Chapter 53, Private Acts of 1947) and that the new jury law did not limit the judges of the Criminal Court to the jury list furnished by the Jury Commission; that "Some of them [Negroes in the jury box] wouldn't come, [when summoned] and some of them that did come didn't want to serve and some that came in, they had a job, and just the two dollars a day was a hardship and they asked to be let off, because they had families and things of that

kind, and I felt it was my duty to let blacks off if it was injurious to them making a living." Of course, he was referring to Section 7 of Chapter 53 of the Acts of 1947 which provided, among other things, that in selecting the Grand Juries, the Criminal Court Judges were not confined to the jury list and were permitted to select members of the Grand Jury from the County at large. "* * * and the judges could select whomever they thought would make good grand jurors, and we were not in any way, as I recall, limited in our judgment on the matter. We could use our best judgment." "Sometimes, when I would get the jury list, if I found people on there that I thought would make good grand jurors, I selected some from there. I used my own judgment as to what I thought would be the best panel of jurors that I could get." "It wasn't a question of whether he was black or white. As I said a while ago, I selected grand juries that I thought would give everybody a fair deal all the way through and a grand jury that if I was charged, I would have wanted to pass on mine." Asked whether he generally selected persons whom he knew, the judge said, "Well, I knew them, or knew of them. I wouldn't say I knew everybody on the grand jury before I put them on, but I had information about them, what kind of people they were, before they went on the grand jury. I didn't select anybody at random for the grand jury." He testified that he and the other Criminal Judge of the County alternated in selecting the Grand Juries.

The record shows that Dr. H. H. Walker, referred to by the judge who presided at the petitioner's original trial as the first Negro who served on the Grand Jury during his tenure as Criminal Judge served on the Grand Jury

empaneled for the May Term of 1953, more than five years after the petitioner was indicted. This record also shows that during the years from 1940 to 1950, approximately 25 per cent of the Davidson County population over 21 years of age was non-White.

The former District Attorney General of Davidson County, testifying as a witness for the petitioner, said that during the period from 1940 to 1955 he worked with the Grand Juries of the County and that Dr. Walker was the first Negro to serve on a Grand Jury during that period.

The petitioner introduced an affidavit of his original trial counsel, in which that attorney stated that he had no knowledge that members of the petitioner's race had been systematically excluded from service on the grand and petit juries of Davidson County or from those involved in the petitioner's indictment and trial, and that he had no occasion to advise the petitioner concerning the composition or method of selection of people for grand and petit jury service, nor concerning his rights in such matters.

Manifestly, this record, showing that no Negro served on a Grand Jury in Davidson County from September 1922 until the May Term of 1953, which was long after Henderson's indictment, positively establishes a prima facie case of proscribed exclusion of members of Henderson's race. The State made no attempt to rebut the prima facie case thus established.

The judge who heard this petition based his judgment of dismissal solely upon his conclusions and findings that "* * * there is absolutely no showing in the record be-

fore us that any segment of the community has been systematically or deliberately excluded by reason of race or color and we, therefore, conclude that there is no proof to establish the allegations of the petition and it must necessarily be dismissed." In arriving at that conclusion the court also said:

"While the legal question of waiver raised by the answer of the respondent could well be a valid one, the issue was not resolved on that question but an evidentiary hearing was had and the decision rests on the result of that hearing. The question is was there a systematic exclusion of Negroes from both grand and petit juries which violated his constitutional rights."

In my opinion the evidence adduced at the hearing upon this petition concerning the composition of the Davidson County Grand Juries from 1922 until May of 1953, does not sustain the conclusions and findings of the trial judge. As I view it, the uncontroverted evidence conclusively demonstrates that Negroes were systematically and purposefully excluded from serving on the Grand Juries of Davidson County. With the adult Negro population being what it was, no other explanation is apparent from this record for completely omitting them from Grand Jury membership over such a long period of time. It would seem strange indeed that the judges, who had responsibility for selecting the Grand Jurors, could find no Negroes worthy of serving on a Grand Jury, and to whom such service would not have been an extraordinary economic hardship. The Supreme Court of the United States has held that the "indisputable fact that no Negro had served on a criminal court grand or petit jury for a period of thirty years created a very strong showing

that during that period Negroes were systematically excluded from jury service because of race. * * * [imposing a duty on the State] to try to justify such an exclusion as having been brought about for some reason other than racial discrimination." Patton v. State of Mississippi, 332 U.S. 463, 466, 68 S.Ct. 184, 186, 92 L.Ed. 76.

It is fundamental that systematic exclusion of Negroes from Grand Jury service because of their race violates the Fourteenth Amendment of the United States Constitution. Patton v. State of Mississippi, supra, and cases there cited. In Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77, the Court said:

"This Court over the past 50 years has adhered to the view that valid grand jury selection is a constitutionally protected right. The indictment of a defendant by a grand-jury from which members of his race have been systematically excluded is a *denial of his right to equal protection of the laws."* (Emphasis supplied.)

And in Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, wherein systematic exclusion of Negroes from Grand Jury duty was established, the Court said:

"In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is *denied the equal protection of the laws guaranteed by the Fourteenth Amendment* if he is indicted by a grand jury *or* tried by a petit jury from which members of his race have been excluded because of their race.

    *    *    *    *    *    *

"In Patton v. State of Mississippi, 332 U.S. 463, 469,

68 S.Ct. 184, 187, 92 L.Ed. 76, this Court declared, in a unanimous opinion, that 'When a jury selection plan, whatever it is, operates in such way as always to result in *the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group,* indictments *and* verdicts returned against them by juries thus selected cannot stand.' This is essentially the situation here. *True, the judges now serving on the local court testified generally that they had not discriminated against Negroes in choosing grand juries, and had only tried to pick the best available jurors.* But as Chief Justice Hughes said for the Court in Norris v. State of Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 584, 79 L.Ed. 1074, *'If, in the presence of such testimony as defendant adduced, the mere general assertions by officials of their performance of duty were to be accepted as an adequate justification for the complete exclusion of Negroes from jury service, the [Equal Protection Clause]—adopted with special reference to their protection—would be but a vain and illusory requirement.'* Compare Reece v. State of Georgia, 350 U.S. 85, 88, 76 S.Ct. 167, 169, 100 L.Ed. 77; Hernandez v. State of Texas, 347 U.S. 475, 481, 74 S.Ct. 667, 671, 98 L.Ed. 866. This is particularly true here where several of the parish judges apparently have never even interviewed a Negro in selecting grand jurors. *We are reluctantly forced to conclude that the uniform and long-continued exclusion of Negroes from grand juries shown by this record cannot be attributed to chance, to accident, or to the fact that no sufficiently qualified Negroes have ever been included in the lists submitted to the various local judges.* It

seems clear to us that Negroes have been consistently barred from jury service because of their race." (Emphasis supplied.)

So, it is no longer open to question or debatable that a Grand Jury racially segregated systematically and deliberately by excluding members of a race is unconstitutionally constituted and void insofar as proceedings against members of the excluded race are concerned. And it is equally incontestable that an indictment against a member of the excluded race by such an unconstitutional Grand Jury is likewise unconstitutional and void. It could not possibly be otherwise. Obviously, a racially unconstitutional Grand Jury is impotent and incompetent to return a valid indictment against a member of the race whose systematic exclusion therefrom renders it unconstitutional as to them. "Therefore, it necessarily follows that the indictment of a Negro defendant by a grand jury in a state court from which members of his race have been intentionally excluded solely because of their race is not good, for the reason that as to such Negro defendant it is not a legal grand jury. * * *" State v. Covington, 258 N.C. 501, 128 S.E.2d 827. See also State ex rel. Hathaway v. Henderson, Tenn.Cr.App., 432 S.W.2d 503.

The majority opinion completely bypasses and ignores the question of systematic exclusion of Negroes from the Grand Jury which returned the indictment against the petitioner. Instead, that opinion is predicated wholly upon the proposition that the petitioner is now estopped to raise that question, on the theory that he waived the composition of the Grand Jury by entering a plea of guilty and by not raising the question before he went to

trial. However, the clear implication of the majority's position is that systematic exclusion of Negroes from Grand Jury service in Davidson County is considered to have been a fact.

It is easy in situations of this kind to lose sight of the real issue when the question concerns the racial composition of the Grand Jury. The determinative issue in such cases, as in this case, is not simply the illegal composition of the Grand Jury, per se, because Negroes were systematically and deliberately excluded therefrom. But rather, the presiding and decisive question is whether the indictment returned against a member of the excluded race by such a racially segregated Grand Jury was void and constituted no legal basis for a valid prosecution.

Inasmuch as the majority opinion is rested solely upon the proposition that by pleading guilty and not raising the question before going to trial, the defendant waived the composition of the Grand Jury and is now precluded from complaining collaterally about those matters, it is necessary to consider the waiver question.

In Shepard v. Henderson, Tenn.Cr.App., 449 S.W.2d 726, we reiterated the firmly established rule of law that a plea of guilty, understandingly and voluntarily entered on the advice of counsel, constitutes an admission of all facts alleged and a waiver of all *non-jurisdictional* and procedural defects and constitutional infirmities, if any, in any prior stage of the proceeding.

But an indictment is jurisdictional. "A lawful accusation is an essential element of a common-law trial by jury, either upon indictment for felonies and capital

offenses or by information for misdemeanors. Such an accusation is jurisdictional; without it there can be no valid prosecution." So said the Supreme Court of this State in State v. Hughes, 212 Tenn. 644, 371 S.W.2d 445, quoting with approval from Wharton's Criminal Law & Procedure (Anderson) Vol. 4, § 1724, at page 506.

"A valid warrant or indictment is an essential of jurisdiction." State v. Covington, 258 N.C. 501, 128 S.E.2d 827. "A valid indictment returned by a legally constituted grand jury is a jurisdictional requirement." Gibbons v. Territory, 5 Okl.Cr. 212, 115 P. 129.

Such is the general law. In 22 C.J.E. Criminal Law § 143, pp. 379-380 the rule is thus stated:

"Jurisdiction to try and punish for a crime cannot be acquired by the mere assertion of it, or invoked otherwise than in the mode prescribed by law, and if it is not so acquired or invoked any judgment is a nullity.

"Ordinarily, a formal accusation, which charges some offense known to law, is essential for every trial for crime, without which the court acquires no jurisdiction to proceed, even with the consent of accused, see infra § 147, and where the law requires a particular form of accusation, that form of accusation is essential. * * *

"Jurisdiction to try offenses is ordinarily acquired by an indictment, or in some jurisdictions by an information, and *where the indictment or information is invalid the court is without jurisdiction.*" (Emphasis supplied.)

And it is said in 22 C.J.S. Criminal Law § 147, pp. 393-396:

> "Since jurisdiction of an offense or its subject matter must be conferred by law, it is usually held, as a general rule, that jurisdiction to take cognizance of an offense or to render a particular judgment cannot be conferred solely on a court by the consent of accused, either express or inferential, or by any fiction of presumption, waiver or estoppel.
>
>    \*    \*    \*    \*    \*    \*
>
> "By pleading guilty or not guilty to an accusation of a crime of which the court has jurisdiction, jurisdiction of the person is conferred on such court; but this is not so as to an offense of which the court has no jurisdiction."

22 C.J.S. Criminal Law § 162, p. 421 states the rule in this language:

> "Generally, where accused pleads to the merits of the action, he waives all objections with respect to the court's jurisdiction of his *person.* So, the objection that the court has no jurisdiction of the *person of accused,* whether by reason of some irregularity in the proceedings, or because of some defect in the constitution of the court which does not prevent it from being a de facto court, or for other reasons, is waived by accused pleading not guilty and going to trial, or by pleading guilty, unless accused is properly permitted to withdraw his plea. *However, the objection that the court does not have jurisdiction of the offense or subject matter is not waived by a plea or going to trial,*

*and may be asserted at any time."* (Emphasis supplied.)

A further statement of the rule is found in 27 Am.Jur., Indictments & Informations, § 187, pp. 731-732:

"It is the general rule that defects or omissions in the indictment or in the mode of finding the indictment, *which are of such a fundamental character as to make the indictment wholly invalid, are not subject to waiver by the accused. Such fundamental defects or omissions are not waived by failure to raise them by preliminary motion or plea or in some other appropriate manner during the trial or by pleading to the merits."* (Emphasis supplied.)

There is a clear and well-defined distinction, frequently lost sight of, between those indictments containing mere irregularities or deficiencies and those that are wholly void. This distinction between the voidable and the void was expressly recognized by our Supreme Court in Robinson v. City of Memphis, 197 Tenn. 598, 277 S.W.2d 341, wherein the Court said:

"The probability is that the trial judge thought that the objection to the warrant came too late, since it was not made until after the entry of judgment. In taking that view of the matter, if he did, the trial judge inadvertently failed, as we sometimes do, to draw the distinction between that which is void, on the one hand, and, on the other hand, that which is voidable only."

In State v. Covington, supra, the Negro defendant was convicted upon his pleas of guilty on indictments which he had previously moved unsuccessfully to quash on

account of asserted intentional exclusion of Negroes from the Grand Jury. The defendant moved to quash the three indictments involved before pleading, as required by a State statute providing, in substance, that such objections to an indictment based on defects and irregularities in the drawing or organization of the Grand Jury must be made by motion to quash the indictment before the jury is sworn and empaneled to try the issue. Reversing, the Supreme Court of North Carolina said:

> "There is abundant authority that *a plea of guilty does not waive a jurisdictional defect.* Weir v. United States, 7th Cir., 92 F.2d 634, 114 A.L.R. 481; People v. Green, 368 Ill. 242, 13 N.E.2d 278, 115 A.L.R. 348; Berg v. United States, 9th Cir., 176 F.2d 122; 22 C.J.S. Criminal Law § 424(7); ibid., § 162; 4 Wharton's Criminal Law and Procedure, by Ronald A. Anderson, § 1901, p. 770. See People v. Green, 329 Ill. 576, 161 N.E. 83.

> \* \* \* \* \* \*

> "Courts indulge every reasonable presumption against a waiver by a defendant charged with crime of fundamental constitutional rights, and do not presume acquiescence in their loss. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

> "In Johnson v. Zerbst, supra, the Court said, 'A waiver

is ordinarily an intentional relinquishment or abandonment of a known right or privilege.'

"* * * Under these circumstances, it is our opinion, and we so hold, *defendant, by his subsequent pleas of guilty in each case, has not waived his objection to the grand jury which indicted him on the ground that it was illegally impanelled and composed in violation of his fundamental constitutional rights, and on the ground that because of a fundamental constitutional prohibition the grand jury was without jurisdiction to find valid indictments against him, a Negro.*" (Emphasis supplied.)

The general rule is well settled in this State that mere irregularities, deficiencies and defects *in otherwise valid indictments* are waived by going to trial without raising objection thereto. Allen v. State, 199 Tenn. 569, 288 S.W.2d 439; Jones v. State, 197 Tenn. 667, 277 S.W.2d 371; Driscoll v. State, 191 Tenn. 186, 232 S.W.2d 28; Johnson v. State, 187 Tenn. 438, 215 S.W.2d 816; Estep v. State, 183 Tenn. 325, 192 S.W.2d 706; Erby v. State, 181 Tenn. 647, 184 S.W.2d 14; Blackman v. State, 169 Tenn. 197, 83 S.W.2d 899; French v. State, 159 Tenn. 451, 19 S.W.2d 276; State ex rel. Scroggins v. Rice, 159 Tenn. 473, 19 S.W.2d 227; Pope v. State, 149 Tenn. 176, 258 S.W. 775; Palmer v. State, 121 Tenn. 465, 118 S.W. 1022; Whim v. State, 117 Tenn. 94, 94 S.W. 674; State ex rel. Lawrence v. Henderson, Tenn.Cr.App., 433 S.W.2d 96, 101, cited in the majority opinion, wherein the petitioner's only complaint with respect to the juries was that he did not receive a copy of the indictment or one of the Grand Jury panel, neither of which he made any request for.

However, it is to be noted that in none of the foregoing cases, nor in any other as far as I can ascertain, has our Supreme Court said that a void indictment is waived by failure to object on that ground before entering a plea, or that, absent such a preliminary challenge, a void indictment is cured by a verdict of guilty. To so hold would be an abrogation of the cardinal constitutional principle that a lawful accusation is an essential jurisdictional element of a criminal trial, without which there can be no valid prosecution. State v. Hughes, supra; State v. Covington, supra; Gibbons v. Territory, supra, and the other authorities above quoted.

In Cobb v. Balkcom, 339 F.2d 95, 101-102 (5th Cir. 1964) these significant statements were made:

"In summary, then, the prior decisions of this court have established three situations, all capital cases, in which a state criminal defendant's failure to object to jury composition will not constitute a waiver barring relief on federal habeas corpus. If defendant's counsel fails to consult with him concerning his rights (Harpole) [United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir. 1959), cert. den. 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78], or where there is failure to consult plus the fact that the evidence of systematic exclusion is neither known nor easily ascertainable at the time of trial (Wiman) [United States ex rel. Seals v. Wiman, 304 F.2d 53 (5th Cir. 1962), cert. den. 372 U.S. 915, 83 S.Ct. 717, 9 L.Ed.2d 722], or where the defendant or his counsel failed to object through fear of engendering hostility (Whitus) [Whitus v. Balkcom, 333 F.2d 496 (5th Cir. 1964)], there is no valid waiver. In Harpole the waiver was ineffective

as to the trial jury, but the plus facts of Wiman and Whitus made the waiver ineffective as to both juries.

"We think this case is controlled by Harpole. Trial counsel did not discuss the right with Cobb or his mother or anyone acting for Cobb. There was no express waiver by Cobb either of his right to challenge the grand jury indictment or the trial jury. His lawyer was satisfied with the grand and trial juries, but this is insufficient. Moreover, considering Cobb's age and inexperience, the fact that he never had a lawyer until after indictment, and the known illegal composition of the grand jury, we feel that Harpole should be extended to cover the grand jury in the present case. In sum, there was no intentional relinquishment of a known right within the purview of the majority opinion in Fay v. Noia [372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837], and for the State to subject a defendant to this situation amounts to a denial of due process and equal protection of the laws guaranteed by the Fourteenth Amendment. What constitutes a valid waiver in this instance is a federal question, and with all deference to the Supreme Court of Georgia, we hold that Cobb's federal rights were not abandoned."

See also: Labat v. Bennett, 365 F.2d 698 (5th Cir. 1966), and McNeil v. State of North Carolina, 368 F.2d 313 (4th Cir. 1966) on subject of waiver in state court.

Moreover, the rule that habeas corpus is not available to test the sufficiency of indictments (Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed 1036; Underwood v. Bomar, 335 F.2d 783 (6th Cir. 1964), cert. den. 380 U.S. 921, 85 S.Ct. 917, 13 L.Ed.2d 805; State

ex rel. Carroll v. Henderson, Tenn.Cr.App., 443 S.W.2d 689), is not a mechanical one. When an indictment is so fatally defective as to deprive the court of jurisdiction it may be reviewed in habeas corpus proceedings. McCoy v. Pescor, 145 F.2d 260 (8th Cir. 1944), cert. den. 324 U.S. 868, 65 S.Ct. 911, 89 L.Ed. 1423, rehearing denied 325 U.S. 891, 65 S.Ct. 1083, 89 L.Ed. 2004; Knight v. Hudspeth, 112 F.2d 137 (10th Cir. 1940), cert. den. 311 U.S. 681, 61 S.Ct. 62, 85 L.Ed. 439. In State ex rel. Smith v. Johnson, 220 Tenn. 49, 413 S.W.2d 694, the indictment was attacked in a habeas corpus petition on the same basis as in the present case and our Supreme Court did not once intimate any belief that the question is not reviewable by habeas corpus.

So, the reason our Supreme Court reversed the trial court and remanded this petitioner's preceding identical petition for an evidentiary hearing clearly appears. That Court certainly recognized that these questions are not waived in this State by failure to raise them before going to trial, and that they may be raised and determined in post-conviction proceedings. Had the Court thought otherwise, an evidentiary hearing patently would have been a futility and would not have been ordered, for the simple reason that such a hearing would not have been necessary if the questions presented were waived by the petitioner's failure to raise them prior to going to trial, and the Court would have simply affirmed the trial court's judgment dismissing the case without an evidentiary hearing. The above-quoted language employed by our Supreme Court in remanding the case for an evidentiary hearing demonstrates that the Court was fully cognizant that under established principles of law the petitioner's

conviction and sentence were constitutionally void if he was tried and convicted upon a void indictment.

Bustillo v. United States, 5 Cir., 421 F.2d 131, 132 and Jackson v. United States, 5 Cir., 394 F.2d 114, cited in the majority opinion, involve statutory federal rules of criminal procedure imposing definite time limitations within which exceptions to Grand Jurors on account of their disqualifications and indictments returned by allegedly invalid Grand Juries may be raised, and providing that unless raised within the prescribed time such objections are waived. Hayes v. Wainwright, D.C., 302 F.Supp. 716 (apparently predicated upon the same federal rules because Jackson v. United States, supra, is cited as authority for the Court's holding) is also cited in the majority opinion. Some states have similar statutes. See State v. Covington, supra, and State v. Wilson, 204 La. 24, 14 So.2d 873, appeal dism. 320 U.S. 714, 64 S.Ct. 202, 88 L.Ed. 419. There is no such statutory time limitation in this State, and, consequently, cases involving such restrictive statutory rules are inapplicable and offer no assistance in the resolution of the question before us in this case. Rather, the Supreme Court of Tennessee has promulgated the variable standard that objections to the Grand Jury or its proceedings must be raised at the first opportunity. Turner et al. v. State, 187 Tenn. 309, 213 S.W.2d 281; Bonds v. State, 220 Tenn. 555, 421 S.W.2d 87.

The authorities hereinabove cited make it abundantly clear that no waiver is or can be imputed to one whose criminal conviction and sentence is unquestionably void. Extensive research has not disclosed a case in which any court has denied relief sought collaterally where the con-

viction and sentence appeared indisputably and conclusively void. Due process and equal protection of law, preserved for all by our Constitution, command that no such practice as that disclosed by this record shall be resorted to or permitted to consign any person to prison upon a void conviction.

In Coppedge v. United States, 369 U.S. 438, 449, 82 S.Ct. 917, 923, 8 L.Ed.2d 21, the United States Supreme Court said this:

> "* * * When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged."

For this Court, or any court, to approve and thus condone the gross and patent injustice of imprisoning a man upon a constitutionally void conviction and sentence, upon the theory that he waived his rights by not speaking up in time, is to substitute diaphanous fiction for fact and to say that justice hangs by a gossamer strand, or indeed that it is only an illusion—a mirage in the distance.

It hardly needs to be said that we should not turn a deaf ear to the petitioner's complaint and close our eyes to the fact that his conviction and sentence are constitutionally void simply because he waited in prison more than 20 years to voice his protest.

In my view, the judgment should be reversed and this petition should be sustained. This does not mean that the petitioner must necessarily go free. For indictments can be returned and trials can be had by juries selected as the Constitution commands. Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 187, 92 L.Ed. 76.

It should be noted in passing that the opinion of this Court in Doyle v. State, cited in the majority opinion, affirming the dismissal, without an evidentiary hearing, of a post-conviction petition containing substantially the same allegations as does the present petition, is directly contrary to the above-quoted November 3, 1967 opinion of the Supreme Court of Tennessee holding that an evidentiary hearing is required when such allegations are made in a post-conviction petition.